# THE BLACKHEATH.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF ALABAMA.

No. 34.   Argued October 31, 1904.—Decided November 28, 1904.

Admiralty has jurisdiction of a libel *in rem* against a vessel for the damages caused by its negligently running into a beacon in a channel, although the beacon is attached to the bottom.

THE facts are stated in the opinion.

*Mr. Assistant Attorney General McReynolds* for the United States, appellant.

Jurisdiction of torts in admiralty depends upon locality—where the cause of action is completed on navigable waters admiralty has jurisdiction, but where it is completed on land the remedy belongs to the courts of common law. *The Plymouth,* 3 Wall. 20, cited and approved in *Ex parte Phœnix Insurance Company,* 118 U. S. 618; *Johnson* v. *Chicago & Pacific Elevator Co.,* 119 U. S. 388; *Homer Ramsdell Transportation Co.* v. *La Compagnie Générale Transatlantique,* 182 U. S. 406, 411. See *The Rock Island Bridge,* 6 Wall. 213, 215—a proceeding *in rem* against a bridge for damage to a ship where jurisdiction was denied.

This court has not attempted to give a general definition of what is land and what is water within the meaning of the admiralty law and the rule adopted in *The Plymouth.* In *The Robert W. Parsons,* 191 U. S. 17, 33, it was held that repairs to a ship in a dry dock were not made on land.

There are no adjudicated cases involving injury by a ship to a beacon set up in navigable waters. Bridges, piers and wharves which pertain to the land are, in fact, mere extensions of the shore, and therefore torts to them are distinctly different from torts to structures lawfully within navigable

waters, and put there solely as aids to navigation. The question now raised was not decided in *The Plymouth* nor has it been in any other case in this court. But see Hughes on Admiralty, 183; *The Arkansas*, 17 Fed. Rep. 383, 386; *Atlee v. Packet Co.*, 23 How. 209; *The Professor Morse*, 23 Fed. Rep. 803; *The F. & P. M. No. 2*, 33 Fed. Rep. 511, 514; *The City of Lincoln*, 25 Fed. Rep. 835.

The lower Federal courts have decided a number of cases wherein they undertook to apply the rule laid down in *The Plymouth*.

*The Neil Cochran*, Br. Adm. 164, 165; *S. C.*, Fed. Cas. 7996 and 10,087; *The Ottawa*, Br. Adm. 356; *S. C.*, Fed. Cas. 10,616; *The Maud Webster*, 8 Ben. 552; Fed. Cas. 9302; *The Mary Stewart*, 10 Fed. Rep. 137; *The City of Milwaukee*, 37 Fed. Rep. 705; *The H. S. Pickands*, 42 Fed. Rep. 239; *The Mary Garrett*, 63 Fed. Rep. 1011; *The Strabo*, 90 Fed. Rep. 110; *Leathers v. Blessing*, 105 U. S. 626; *Rundell v. La Compagnie Générale Transatlantique*, 100 Fed. Rep. 655; *Dailey v. City of New York*, 128 Fed. Rep. 799; *De Lovio v. Boit*, 2 Gall. 398; *S. C.*, Fed. Cas. 3776. And see 6 Rose's Notes, 459, 460.

The opinions of this court discussing the origin, nature and jurisdiction of admiralty courts demonstrate a well defined purpose to construe liberally the terms "all cases of admiralty and maritime jurisdiction" and to ascertain its boundary "by a reasonable and just construction of the words used in the Constitution, taken in connection with the whole instrument and the purposes for which admiralty and maritime jurisdiction were granted to the Federal government." *The Steamer St. Lawrence*, 1 Black. 522, 527; *Ins. Co. v. Dunham*, 11 Wall. 1, 22; *Waring v. Clarke*, 5 How. 440, 450; *The Genessee Chief*, 12 How. 443; *Ex parte Easton*, 95 U. S. 68. And see also Benedict's Adm. §§ 151, 161, 172, 175, 191; *Crosse v. Diggs*, Siderfin, 158; Coke's Inst., Pt. 4, p. 148; Admiralty Act of 1861, 24 Vict. c. 10; Williams and Bruce, Adm. Juris., 3d ed., 73.

The beacon was in no proper sense land, nor any part

thereof.   It was not connected with the shore, and was not erected for any purpose pertaining to the land.   Lights are highly important adjuncts to navigation, and their safety will be better secured by the speedy processes of admiralty courts than by the actions *in personam* in a court of law.   *The Gas Float Whitton,* 2 L. R. App. Cas. 337, 349.

If in admiralty there is no adequate remedy for injuries to harbor and channel lights by foreign ships, the Government is without power to properly protect and preserve these highly important adjuncts to commerce and navigation.

*Mr. Benjamin Carter,* with whom *Mr. R. H. Clarke* was on the brief, for appellee:

A tort, to be a subject of admiralty jurisdiction, must have been consummated, in some navigable area, (1) merely on or in or (2) through action of the water.  'This proposition is in harmony with the text of all the decisions for the United States Attorney General cited on the Government's brief which cannot be said to impeach it.

Where the wrongful act and its injurious consequences were indistinguishable, with respect to time and place, the inquiry has turned on the mere locality of the act itself.   Under this head many of the cases cited fall.

In other cases discussed or cited in the Government's argument the inquiry was whether the injury following on the tortious act was accomplished by supervening action of the water, mechanical or chemical.   But see *Cope* v. *Vallette Dry Dock Co.,* 119 U. S. 625, in which this court held that injury to a dry dock was not cognizable in admiralty.

In the United States admiralty jurisdiction is not derived from any considerations of international or even maritime convenience.   It is purely the creature of our Constitution, and so shut off from those accretions which, in view of the policy and institutions of other Christian nations, might be commended.   With reference to England, especially, it is clear that, if our admiralty courts have the ancient admiralty juris-

diction, they have not that which exists in England today. *The Maud Webster*, 8 Ben. 552.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from the District Court on the question of jurisdiction, which is certified. The case is a libel *in rem* against a British vessel for the destruction of a beacon, Number 7, Mobile ship-channel lights, caused by the alleged negligent running into the beacon by the vessel. The beacon stood fifteen or twenty feet from the channel of Mobile river, or bay, in water twelve or fifteen feet deep, and was built on piles driven firmly into the bottom. There is no question that it was attached to the realty and that it was a part of it by the ordinary criteria of the common law. On this ground the District Court declined jurisdiction and dismissed the libel. *The Blackheath*, 122 Fed. Rep. 112.

In *The Plymouth*, 3 Wall. 20, where a libel was brought by the owners of a wharf burned by a fire negligently started on a vessel, the jurisdiction was denied by this court. See also *Ex parte Phœnix Ins. Co.*, 118 U. S. 610. In two later cases there are dicta denying the jurisdiction equally when a building on shore is damaged by a vessel running into it. *Johnson* v. *Chicago and Pacific Elevator Co.*, 119 U. S. 388; *Homer Ramsdell Transportation Co.* v. *La Compagnie Générale Transatlantique*, 182 U. S. 406, 411. And there are a number of decisions of District and other courts since *The Plymouth*, which more or less accord with the conclusion of the court below. 62 C. C. A. 287, 290. It would be simple, if simplicity were the only thing to be considered, to confine the admiralty jurisdiction, in respect of damage to property, to damage done to property afloat. That distinction sounds like a logical consequence of the rule determining the admiralty cognizance of torts by place.

On the other hand, it would be a strong thing to say that Congress has no constitutional power to give the admiralty

here as broad a jurisdiction as it has in England or France. Or, if that is in some degree precluded, it ought at least to be possible for Congress to authorize the admiralty to give redress for damage by a ship, in a case like this, to instruments and aids of navigation prepared and owned by the Government. But Congress cannot enlarge the constitutional grant of power, and therefore if it could permit a libel to be maintained, one can be maintained now. We are called on by the appellees to say that the remedy for any case of damage to a fixture is outside the constitutional grant.

The precise scope of admiralty jurisdiction is not a matter of obvious principle or of very accurate history. As to principle, it is clear that if the beacon had been in fault and had hurt the ship a libel could have been maintained against a private owner, although not *in rem. Philadelphia, Wilmington & Baltimore R. R.* v. *Philadelphia & Havre de Grace Steam Towboat Co.,* 23 How. 209; *Atlee* v. *Packet Co.,* 21 Wall. 389; *Panama Railroad* v. *Napier Shipping Co.,* 166 U. S. 280. Compare *The Rock Island Bridge,* 6 Wall. 213. But, as has been suggested, there seems to be no reason why the fact that the injured property was afloat should have more weight in determining the jurisdiction than the fact that the cause of the injury was. *The Arkansas,* 17 Fed. Rep. 383, 387; *The F. & P. M. No. 2,* 33 Fed. Rep. 511, 515; Hughes, Adm. 183. And again it seems more arbitrary than rational to treat attachment to the soil as a peremptory bar outweighing the considerations that the injured thing was an instrument of navigation and no part of the shore, but surrounded on every side by water, a mere point projecting from the sea.

As to history, while as is well known the admiralty jurisdiction of this country has not been limited by the local traditions of England, *The Lottawanna,* 21 Wall. 558, 574, *et seq.,* the traditions of England favor it in a case like this. The admiral's authority was not excluded by attachment even to the main shore. From before the time of Rowghton's Articles he could hold inquest over nuisances there to naviga-

tion and order their abatement. Art. 7, 1 Black Book (Twiss), 224; Clerke's Praxis; 1 Select Pleas in Adm., 6 Seld. Soc. Publ. xlv, lxxx; Articles of Feb. 18, 1633, Exton, Maritime Dicæology, pp. 262, 263; 2 Hale de Port., c. 7, p. 88, in Harg. Law Tracts; Zouch, in Malynes, Lex Merc., 3d ed., 122; Com. Dig. Admiralty, E. 13. See Benedict Adm., 3d ed. § 151; *De Lovio* v. *Boit*, 2 Gall. 398, 470, 471, note. Coke mentions that "of latter times by the letters patents granted to the lord admirall he hath power to erect beacons, seamarks and signs for the sea, &c." 4 Inst. 148, 149. To the French admiral, it is expressly stated, belonged "Contraincte et pugnicion, tant en criminel, que en civil," in this matter. 1 Black Book, 445, 446. See *Crosse* v. *Diggs*, 1 Sid. 158. Spelman says: "The place absolutely subject to the jurisdiction of the admiraltie, is the sea, which seemeth to comprehend publick rivers, fresh waters, creekes, and surrounded places whatsoever within the ebbing and flowing of the sea at the highest water." Eng. Works, 2d ed. 226. Finally, by the articles of February 18, 1633, all the judges of England agreed that the admiralty jurisdiction extended to "injuries there which concern navigation upon the sea." Exton, Maritime Dicæology, ad fin., pp. 262, 263. And "if the libel be founded upon one single continued act, which was principally upon the sea, though part was upon land, a prohibition will not go." Com. Dig. Admiralty, F. 5; 1 Roll. Abr. 533, pl. 18.

What the early law seems most to have looked to as fixing the liability of the ship was the motion of the vessel, which was treated as giving it the character of a responsible cause. Bracton recognizes this as an extravagance, but admits the fact, for the common law. 122*a*, 136*b*. 1 Select Pleas of the Crown, 1 Seld. Soc. Pub. 84. The same was true in the admiralty. Rowghton, *ubi sup.* art. 50; 2 Rot. Parl. 345, 346, 372*a*, *b*; 3 Rot. Parl. 94*a*, 120*b*, 121*a*; 4 Rot Parl. 12*a*, *b*, 492*b*, 493. The responsibility of the moving cause took the form of deodand when it occasioned death, like the steam engine in *Regina* v. *Eastern Counties Ry.*, 10 M. & W. 58, and innum-

erable early instances, but it was not confined to such cases. 2 Black Book (Twiss.), 379. But compare 1 Select Pleas in Adm., 6 Seld. Soc. Publ. lxxi, lxxii. The principle has remained until the present day. *The Malek Adhel,* 2 How. 210, 234; *The China,* 7 Wall. 53.

The foregoing references seem to us enough to show that to maintain jurisdiction in this case is no innovation even upon the old English law. But a very little history is sufficient to justify the conclusion that the Constitution does not prohibit what convenience and reason demand.

In the case of *The Plymouth* there was nothing maritime in the nature of the tort for which the vessel was attached. The fact that the fire originated on a vessel gave no character to the result, and that circumstance is mentioned in the judgment of the court, and is contrasted with collision, although the consideration is not adhered to as the sole ground for the decree. It has been given weight in other cases. *Campbell v. H. Hackfeld & Co.,* 62 C. C. A. 274; *The Queen v. Judge of City of London Court,* [1892] 1 Q. B. 273, 294; Benedict, Admiralty, 3d ed. § 308. Moreover, the damage was done wholly upon the mainland. It never has been decided that every fixture in the midst of the sea was governed by the same rule. The contrary has been supposed in some American cases, *The Arkansas,* 17 Fed. Rep. 383, 387; *The F. & P. M. No. 2,* 33 Fed. Rep. 511, 515, and is indicated by the English books cited above. It is unnecessary to determine the relative weight of the different elements of distinction between *The Plymouth* and the case at bar. It is enough to say that we now are dealing with an injury to a government aid to navigation from ancient times subject to the admiralty, a beacon emerging from the water, injured by the motion of the vessel, by a continuous act beginning and consummated upon navigable water, and giving character to the effects upon a point which is only technically land, through a connection at the bottom of the sea. In such a case jurisdiction may be taken without transcending the limits of the Constitution or en-

countering *The Plymouth* or any other authority binding on this court. As to the present English law, see *The Uhla*, L. R. 2 Ad. & Ec. 29, note; *The Swift*, [1901] L. R. Prob. 168.

*Decree reversed.*

Mr. Justice Brown, concurring.

I do not dissent from the conclusion of the court, although for forty years the broad language of Mr. Justice Nelson in the case of *The Plymouth*, 3 Wall. 20, has been accepted by the profession and the admiralty courts as establishing the principle that the jurisdiction of the admiralty does not extend to injuries received by any structure affixed to the land, though such injuries were caused by a ship or other floating body. It received the approval of this court in the case of the *Phœnix Insurance Company*, 118 U. S. 610, and in that of the *Chicago & Pacific Elevator Company*, 119 U. S. 388, and has been followed by the courts of at least a dozen different districts, and applied to bridges, piers, derricks and every other class of structure permanently affixed to the soil.

I do not think this case can be distinguished from the prior ones, as, in my opinion, it makes no difference in principle whether a beacon be affixed to piles driven into the bottom of the river or to a stone projecting from the bottom, or whether it be surrounded by twelve feet or one foot of water, or whether the injury be done to a wharf projecting into a navigable water, or to a beacon standing there, or whether the damage be caused by a negligent fire or by bad steering.

I accept this case as practically overruling the former ones, and as recognizing the principle adopted by the English Admiralty Court Jurisdiction Act of 1861 (sec. 7), extending the jurisdiction of the admiralty court to "any claim for damages by any ship." This has been held in many cases to include damage done to a structure affixed to the land. The distinction between damage done to fixed and to floating structures is a somewhat artificial one, and, in my view, founded

upon no sound principle; and the fact that Congress, under the Constitution, cannot extend our admiralty jurisdiction, affords an argument for a broad interpretation commensurate with the needs of modern commerce. To attempt to draw the line of jurisdiction between different kinds of fixed structures, as, for instance, between beacons and wharves, would lead to great confusion and much further litigation.