## THE MARGARET THOMAS.

### (District Court, D. Maryland. September 30, 1910.)

1. ADMIRALTY (§ 28*)—TOWAGE (§ 19*)—INJURY TO BEACON LIGHT—LIABILITY OF VESSEL IN ADMIRALTY—VESSEL IN TOW.

While a court of admiralty has jurisdiction of a libel in rem against a vessel for damages caused by its negligently running into a beacon fixed in the channel, all the rules of admiralty proceedings are applicable in such suit, and where the vessel was in tow, and the towing tug was alone in fault, it alone is responsible, and there can be no recovery against the tow.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 278–288; Dec. Dig. § 28;* Towage, Cent. Dig. § 41; Dec. Dig. § 19.*]

2. TOWAGE (§ 19*)—LIABILITY OF VESSEL FOR INJURY TO BEACON—VESSEL IN TOW—FAULT OF TUG.

A tug towing a schooner down the channel from Tampa when about half the length of her hawser beyond a light beacon on her port side turned abruptly to the eastward, losing for the time her control of the schooner by ceasing to pull, and then pulling her against the beacon which she struck and destroyed. By the tug ceasing to pull on the hawser the schooner also lost her ability to direct her own course in time to avoid the beacon. *Held*, that the fault was solely that of the tug, and the schooner was not liable for the injury caused.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 41; Dec. Dig. § 19.*]

In Admiralty. Libel in rem by the United States against the schooner Margaret Thomas. Decree for respondent.

The schooner Margaret Thomas, loaded with phosphate rock, on a voyage from Tampa to Baltimore, was being towed by the tug De Witt C. Ivins on a 120-fathom hawser down the dredged channel. The schooner came in contact with the south cut Lower No. 6 Beacon in Old Tampa Bay, belonging to the United States, and destroyed it. The United States libeled the schooner for the damages.

John Philip Hill and J. Craig McLanahan, for libelants.
Robert H. Smith and Harry N. Abercrombie, for respondents.

MORRIS, District Judge (orally). In the case of The Blackheath, 195 U. S. 361, 25 Sup. Ct. 46, 49 L. Ed. 236, it was decided by the Supreme Court that admiralty had jurisdiction of a libel in rem against a vessel for damages caused by its negligently running into a beacon light fixed in a channel. But, when you proceed in such a case in admiralty, all the rules of admiralty proceedings are ap-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plicable. If this was a case of collision between this schooner which was being towed out and another vessel, it could not be said that the schooner was to bear the damage if it was not at fault. If it was the fault of both the schooner and the tug, which was towing the schooner, then they would be both liable. But, if it was found as a fact, that the tug was in fault and the schooner was not, the vessel damaged could not proceed against the schooner and hold the schooner liable for the damages, but the whole damages must be borne by the tug. If the tow alone is at fault, it alone is responsible; if the tug alone is at fault, it alone is held responsible. Hughes on Admiralty, p. 219; Spencer on Maritime Collisions, § 122. It seems to me that is the rule which must apply in this case, although counsel for the United States contend that the schooner, having run against and destroyed the beacon, is primarily liable, and that if it has any remedy, then its remedy is against the tug that caused it to run against the beacon. I do not think that is the admiralty rule governing this case. It becomes necessary, then, to consider whether it was the fault of the tug or of the schooner. The rule in the United States with regard to the relative liabilities of tug and tow is very clearly stated in The Margaret, 94 U. S. 494, 24 L. Ed. 146. That was a case where a tug was towing a brig into the port of Racine, Wis. The tug took the sailing vessel in charge and undertook to take her into port. In doing so she made an abrupt turn in order to go around a pier on one side of the channel. In making that sudden turn, the tug ceased to haul upon the tow, and the tow lost her headway and drifted against the pier and was destroyed.

The facts are thus stated on page 496:

"The tug laid her course in a southwesterly direction towards the end of the north pier. Upon reaching it she made a short turn to the starboard around it and entered the harbor. The brig followed. She had entirely lost her steerageway, and ceased to obey her helm. The tug had lost all control over her. She sagged off toward the south pier, and grounded on a bar, which she struck repeatedly with the rise and fall of the water. The tug stopped and then resumed her traction. The port line broke. Presently the starboard line broke also. The brig was thrown by the force of the swell upon the end of the pier."

In some respects that occurrence is similar to the situation here. If it be true that the tug made a sharp turn to eastward and lost control of her tow, and the tow lost her headway, and for that reason drifted up against the bank on which the beacon was established, then it seems that the case comes within the rule, which holds the tug to be in fault. The rule is thus stated by the Supreme Court in The Margaret, on page 497, 94 U. S., 24 L. Ed. 146:

"The tug was bound to bring to the performance of the duty she assumed reasonable skill and care, and to exercise them in everything relating to the work until it was accomplished. The want of either in such cases is a gross fault, and the offender is liable to the extent of the full measure of the consequences."

It seems to me that there can be no doubt from all the proof, not only from the proof adduced by the respondent, but all the proof, that the tug, taking this schooner down the channel, in making an abrupt turn to the eastward, did not maintain her pull on the schoon-

er until she had passed the beacon; but when the tug was about half the length of the hawser beyond the beacon she turned abruptly to the east. It seems to me that it is almost conceded that the tug lost control of the schooner by ceasing to pull on her, and the schooner in consequence lost her ability to direct her own course because her headway was dying down. Making that turn—an abrupt turn to the eastward—the tug pulled the schooner in that direction and eventually against the beacon. Those facts, it seems to me, under the proof can hardly be disputed. I had some doubt in my mind when the case was stated and as the case proceeded whether there was not something which those in charge of the schooner could have done to prevent the accident; that is, to put her head to starboard and keep the schooner away. Now, it is possible that something of that kind might have been done, but it is not fair in considering a case of this kind to imagine what might have been done if everything could have been foreseen. This schooner was in charge of her captain and a licensed pilot. Their primary duty was to follow after the tug. If they saw a danger which they could avoid by putting the schooner's helm to port, they should have done so, but they must have a little time to see the danger and consider it and act. According to the testimony of the master of the schooner, they did put their helm to port, but they had not sufficient time to change their course, because the tide was against them and their headway was very slight. I cannot find from the testimony, therefore, without straining it unduly, that the schooner was in fault. If they were both in fault, the government could proceed against either and collect the damages. In this case I do not think the schooner was at all in fault. It seems to me that she did her duty in following after the tug, relying on the tug having the proper knowledge and skill to take her out through the channel without danger. This could have been done and is done constantly. It seems that the trouble arose in this way: The master of the tug, not being as skillful and as familiar with the business as he might have been, was fearful if he did not begin to turn early that his tug would not have the power to turn the schooner eastward into the channel as the change in the direction of the channel required, so he began too soon to pull her eastward and in that way brought the schooner against the bank.

I do not think the schooner was in fault, and not being in fault—even though it was the schooner that knocked down the beacon—she cannot be held.