## SUPERVISOR OF PUBLIC ACCOUNTS v. SCHILLING (ECUYER, Intervener).*

### No. 16387.

Court of Appeal of Louisiana. Orleans.

June 22, 1936.

Charles J. Rivet, of New Orleans, for appellant.

Prowell & McBride, of New Orleans, for intervener.

WESTERFIELD, Judge.

Alice Lee Grosjean, supervisor of public accounts of Louisiana, caused the seizure of a Nash coupé automobile and three gallons of alcohol on the ground that no tax had been paid upon the alcohol as required by Act No. 15 of 1934, as amended, and that the automobile, having been used for the transportation of untaxed alcohol, was subject to forfeiture under the provisions of the act referred to.

Judgment was rendered on December 14, 1935, in plaintiff's favor, as prayed for, and on the 21st day of January, 1936, Leon Ecuyer filed a petition of intervention setting up that he was the owner of a certain chattel mortgage secured by the seized automobile; that he had no knowledge of and was in nowise responsible for the illegal use of the automobile, and prayed for recognition of his chattel mortgage and vendor's lien and that the supervisor of public accounts be ordered to pay over to him, out of the proceeds of its public sale, a sufficient sum to discharge his claim with interest and costs.

After a trial of the issue presented by the intervention, judgment was rendered in favor of the intervener ordering the recognition of his vendor's lien and chattel mortgage up to the sum of $65, the mortgage having been reduced by payment to that amount, and decreeing that the intervener should be paid with preference and priority out of the proceeds of the sale by the

*Rehearing denied Oct. 5, 1936. Writ of certiorari refused Nov. 30, 1936.

civil sheriff. From this judgment the supervisor of public accounts appealed to this court.

Section 16 of Act No. 15 of 1934, as amended, reads as follows:

"(a) The transportation, carriage, or movement from point to point, in this State by an automobile, truck, boat, conveyance, vehicle or other means of transportation, other than a common carrier, of any article or articles on which the tax levied by this Act has not been paid, is prohibited, and the said automobile, truck, boat, conveyance, vehicle or other means of transportation, so transporting any said article or articles, shall be subject to seizure by the Supervisor of Public Accounts and to forfeiture and sale, in the manner provided for in this Act.

"(b) The Supervisor is hereby authorized to demand the forfeiture and sale, * * * of any automobile, truck, boat, conveyance, vehicle or other means of transportation, other than a common carrier, used in the transportation of any article or articles on which a tax levied by this Act has not been paid. * * *

"(c) * * * If upon the trial of the said proceeding, it is established by satisfactory proof that the said automobile, truck, boat, conveyance, vehicle, or other means of transportation, has been used to transport any article or articles on which a tax is levied by this Act and upon which said tax has not been paid, then the court shall render judgment accordingly, declaring the forfeiture of said automobile, truck, boat, conveyance, vehicle or other means of transportation, and ordering the sale thereof. * * * It is furthermore the intent and purpose of these proceedings, that the forfeiture and sale of said automobile, truck, boat, conveyance, vehicle or other means of transportation, shall be and operate as a penalty for the violation of this Act by illegal transportation; and the payment of the tax due on the article upon which a tax is levied by this Act, at the moment of seizure or thereafter, shall not operate to prevent, abate, discontinue, or defeat the said forfeiture and sale of said property."

It is conceded that the automobile is properly the subject of forfeiture. Counsel for intervener, in his brief, states: "The only point involved is whether an innocent lienholder on an automobile forfeited under the provisions of Act 15 of 1934, as amended, can assert his lien against the automobile after the forfeiture."

Our attention is directed to section 16 of the Act of 1934, where, in paragraph (c), it is stated that if the residence of the owner of a seized conveyance is unknown, or if the owner is a nonresident, an attorney shall be appointed to represent the unknown or absent owner, and where it is also provided that "the payment of the tax due on the article upon which a tax is levied by this Act, at the moment of seizure or thereafter, shall not operate to prevent, abate, discontinue, or defeat the said forfeiture and sale of said property." The fee of the attorney so appointed it is also provided, shall be "paid out of the proceeds of the sale of said property."

We are also directed to section 20, which provides for the forfeiture and sale of beverages upon which the tax has not been paid and in which section beverages are repeatedly referred to as "the articles" seized. The use of the words "said property" and "articles seized" in these two sections is said to be significant when considered in connection with section 21 of the act, which provides a method for the assertion of the rights of an innocent owner or lienholder in the following words: "Any person who claims title to any property seized under the provisions of this Act, or claims to be entitled to any lien existing thereon prior to the date of seizure, and who did not in any respect participate in the violation of this Act, may file with the Supervisor, under oath, a detailed statement of his claim, with a sworn declaration that said claimant did not in any way participate in the violation of this Act, and thereafter, the said property may be released by the Supervisor and delivered to him; provided, that the said claimant shall furnish to the Supervisor a good and solvent surety bond, in a penal sum not less than double the appraised value of the goods seized, and in no event less than Fifty ($50.00) Dollars, which said bond shall be conditioned to pay the Supervisor the appraised value of the goods, and all costs, in the event the claimant does not prosecute his claim to successful judgment. * * * In the event bond has been furnished by the claimant and the property has been released to him, the judgment of the Court, if the contention of the Supervisor is sustained, shall be directed against both the claimant and the surety on the bond and shall include all costs, from the

beginning of the seizure up to the final disposition of the case."

The argument is that section 21 relates to vehicles, as well as to any other species of property seized, under the terms of the act, and it will be observed that this section authorizes the bonding of the seized property by the giving of a bond "conditioned to pay the Supervisor the appraised value of the goods."

■ In our opinion an automobile is not comprehended within the term "goods," and we believe that this section of the act refers to the alcohol and not the conveyance or means by which it is illegally transported. Moreover, the amount of the bond is fixed "in a penal sum of not less than double the value of the goods seized." There is no provision in the act for the appraisal of seized vehicles used for illegal transportation. Section 16 is the only section of the act which deals with the forfeiture of vehicles used for the transportation of articles on which no tax has been paid, and it provides for a penalty of forfeiture and makes no exception in favor of the owner, mortgagee, or lienholder, whether innocent or otherwise. Section 21 has reference to goods seized under sections 17, 18, 19, and 20, which treat of alcoholic beverages and necessary stamps covering the taxes due and the procedure for the condemnation of seized untaxed beverages.

■ Section 22 authorizes the supervisor of public accounts to waive proceedings for the forfeiture of "seized taxable articles" and makes no mention of vehicles. The conclusion is inescapable that the legislative intent was to provide for the forfeiture of the instrumentalities of illegal transportation without exception and without regard to the ownership whether innocent or otherwise. It was the thing itself which offended and which it intended to punish. A clear distinction is made between vehicles and goods.

An analogy is found in the federal statutes as interpreted by the federal courts. An act of Congress of July 13, 1866, section 3450 of the Revised Statutes (see 26 U.S.C.A. § 1441 (b) provides: "Whenever any goods or commodities for or in respect whereof any tax is or shall be imposed, * * * are removed, or are deposited or concealed in any place, with intent to defraud the United States of such tax, or any part thereof, all such goods and commodities, * * * shall be for-

feited; and in every such case all the casks, vessels, cases, or other packages whatsoever, containing, or which shall have contained, such goods or commodities, respectively, and every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal or for the deposit or concealment thereof, respectively, shall be forfeited."

Acting under the authority of this section, a Hudson automobile, which had been used for the concealment of 58 gallons of alcohol upon which no tax had been paid the United States, was seized. The owner of the automobile intervened and claimed that the seizure of his property was a violation of the Fifth Amendment of the Constitution of the United States relative to the deprivation of property without due process of law, since he was in ignorance of its illegal use. The Supreme Court of the United States in J. W. Goldsmith, Jr.-Grant Company v. United States, 254 U.S. 505, 41 S.Ct. 189, 191, 65 L.Ed. 376, held that, if the proposition were new, the force of the contention would be formidable, but that it had been often held otherwise and the doctrine was now "too firmly fixed in the punitive and remedial jurisprudence of the country to be now displaced." The court said: "In breaches of revenue provisions, some forms of property are facilities, and therefore it may be said, that Congress interposes the care and responsibility of their owners in aid of the prohibitions of the law and its punitive provisions, by ascribing to the property a certain personality, a power of complicity and guilt in the wrong. In such case there is some analogy to the law of deodand by which a personal chattel that was the immediate cause of the death of any reasonable creature was forfeited. To the superstitious reason to which the rule was ascribed, Blackstone adds 'that such misfortunes are in part owing to the negligence of the owner, and therefore, he is properly punished by such forfeiture.' And he observed: 'A like punishment is in like cases inflicted by the Mosaical law: "If an ox gore a man that he die, the ox shall be stoned, and his flesh shall not be eaten." And, among the Athenians, whatever was the cause of a man's death, by falling upon him was exterminated or cast out of the dominions of the republic.' See, also, The Blackheath, 195 U.S. 361, 366, 367, 25 S. Ct. 46, 49 L.Ed. 236; Liverpool, etc., Navigation Company v. Brooklyn Eastern Dis-

trict Terminal, 251 U.S. 48, 53, 40 S.Ct. 66, 64 L.Ed. 130." See, also, United States v. Two Horses, 28 Fed.Cas. p. 294, No. 16,578; United States v. Two Bay Mules (D.C.) 36 F. 84; Dobbins' Distillery v. United States, 96 U.S. 395, 396, 24 L.Ed. 637; United States v. One Black Horse (D.C.) 129 F. 167; United States v. Stowell, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555; United States v. Mincey (C.C.A.) 254 F. 287, 5 A.L.R. 211; Logan v. United States (C.C.A.) 260 F. 746, and United States v. One Saxon Automobile (C.C.A.) 257 F. 251, overruling United States v. Two Barrels of Whisky (C.C.A.) 96 F. 479.

It seems to us, therefore, that the Legislature of 1934 intended to adopt the procedure which the federal government had in force for many years as a means of enforcing its revenue statute, and that it intended to denounce and condemn the facilities used in the evasion of the taxes imposed by the statute—that when automobiles or other vehicles were found guilty it was intended that they should be irrevocably forfeited. It follows, therefore, that the judgment appealed from must be reversed.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of the plaintiff, dismissing the claim of intervener at his cost.

Reversed.