## SOUND MARINE & MACHINE CORPO-RATION v. WESTCHESTER COUNTY.*
### No. 50.

Circuit Court of Appeals, Second Circuit.
Dec. 5, 1938.

*Writ of certiorari denied 59 S.Ct. 582, 83 L.Ed. ——.

James H. Hickey, of New York City, for appellant.

William A. Davidson, Co. Atty., of White Plains, N. Y. (Frank J. Claydon, of White Plains, N. Y., of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

Appellant owns riparian property at Mamaroneck abutting the waters of Mamaroneck Harbor. In 1929, appellee laid a sewer pipe in the harbor across the channel in front of the premises in a way to diminish the depth of the channel from 10' mean low water to approximately 6.8' mean low water, and it is said that the depth of the water was less at extreme low tide.

Appellant uses its premises for boat building, repairing and storing yachts. An important feature of the use of this property for this business is its access by water for boats to be repaired or stored. Such access is furnished by Indian Creek, which flows along the side of appellant's property into an old channel leading from Long Island Sound to the southwest of Harbor Island. The boats may pass from this channel into a channel constructed by the United States Government in 1915; the latter leads to the northeast of Harbor Island. The government maps indicate the depth of the water in the old channel as 10' at mean low tide, but there is testimony that the channel seldom, if at any time, had such depth and, it is said, was in fact filled with mud and silt which required boats of 6' draft to wait until high tide to use it.

Pursuant to congressional authority, the War Department gave appellee permission to lay a sewer pipe for an outlet stretching from the Mamaroneck Pier into Long Island Sound. The sewer was to be laid in a trench under the bottom surface of the harbor so as not to interfere with navigation. Appellee secured from New York State an easement to cross the bottom of the harbor, which was State-owned land. The sewer was laid across the old channel but it is contended that it was not placed in a trench as specified. Soundings made show that as a result of the way it was laid, the distance from the top of the sewer pipe to the surface of the water, under conditions approximately mean low tide, was much less than the 10' depth indicated on the government maps of 1909. In any event, the depth at mean low tide across the piping is about five to six feet. The facts as to the original depth of the old channel are in dispute and no finding was made by the district court as to them. But appellant insists that even if the old channel had an actual depth of only 6 feet, the channel still remains, for purposes of navigation, at 10 feet, as fixed by the maps, and that this may be secured by dredging. The laying of the sewer pipe prevented such dredging. Appellant rests its claim upon the presence of the sewer pipe which thus interferes with its right of navigation in going to and from its property; it asserts that its right of access to the main channel has been interfered with and that this interference constitutes a nuisance. The libel seeks to abate the nuisance by injunction or in the alternative for compensatory damages. The court below found that there was no admiralty jurisdiction.

As authoritatively stated, the admiralty court is limited as to jurisdiction (Grace v. American Central Ins. Co., 109 U. S. 278, 3 S.Ct. 207, 27 L.Ed. 932), and the burden is upon the appellant to establish affirmatively the right to invoke such jurisdiction. Robertson v. Cease, 97 U.S. 646, 24 L. Ed. 1057. Pursuant to art. 3, § 2, cl. 1 of the Constitution, U.S.C.A. Const. art. 3, § 2, cl. 1, the jurisdiction of the district courts has been defined by Congress to extend to "all civil causes of admiralty and maritime jurisdiction" (28 U.S.C.A. § 41). Such jurisdiction is exclusive of the state courts except where the common law gives a concurrent remedy (28 U.S.C.A. § 371). Here federal jurisdiction must rest upon the right to pursue a remedy in admiralty. There is no diversity of citizenship.

There is no statutory definition of admiralty jurisdiction; its scope is fixed by the Constitution beyond the range of congressional alteration. The Blackheath, 195 U.S. 361, 369, 25 S.Ct. 46, 49 L.Ed. 236.

We look, therefore, to traditional admiralty jurisdiction for guidance in deciding the question here presented. But an absence of the precise question having been presented to an admiralty court heretofore is not fatal to assuming jurisdiction if it exists. New situations arise from time to time which may call for a consideration of the jurisdiction of admiralty.

■ This riparian owner had the incorporeal right to free ingress and egress to abutting navigable waters. Town of Brookhaven v. Smith, 188 N.Y. 74, 80 N.E. 665, 9 L.R.A.,N.S., 326, 11 Ann.Cas. 1; Fort Plain Bridge Co. v. Smith, 30 N.Y. 44, 62; People v. Delaware & H. Co., 213 N.Y. 194, 200, 107 N.E. 506; People ex rel. Lehigh Valley Ry. Co. v. State Tax Comm., 247 N.Y. 9, 15, 159 N.E. 703; U.S. v. Cress, 243 U.S. 316, 321, 37 S.Ct. 380, 61 L.Ed. 746; Clark v. Peckham, 10 R.I. 35, 38, 14 Am.Rep. 654; Brayton v. City of Fall River, 113 Mass. 218, 230, 18 Am.Rep. 470. The authorities have had occasion from time to time, in maritime cases, to deal with physical invasion of corporeal rights of a maritime character, such as those appertaining to injuries inflicted on ships by other ships or by instrumentalities connected with land, or by ships on instrumentalities relating to navigation but physically connected with land. From the incident that in all such cases the thing injured or the thing injuring was clearly associated with the sea, came the rule that as to such torts admiralty jurisdiction was dependent upon the locality where the tort was committed, usually the sea or its tide waters. Philadelphia W. & B. R. Co. v. Philadelphia & Havre de Grace Steam Towboat Co., 64 U.S. 209, 215, 23 How. 209, 215, 16 L.Ed. 433. Under this rule a number of cases have sustained admiralty jurisdiction where a ship was damaged because of obstructions in navigable waters (Philadelphia, W. & B. R. Co. v. Philadelphia, etc., Co. supra); or a slip was damaged by negligent handling of a ship (Valvoline Oil Co. v. Steamtug Dalzell, 1936 A.M.C. 76); or a ship negligently destroyed beacons or other structures which aided navigation (The Blackheath, supra; The Raithmoor, 241 U.S. 166, 36 S.Ct. 514, 60 L.Ed. 937). But admiralty jurisdiction has been consistently denied where the injury was to some structure associated in ordinary experience with the land. Thus where wharves were injured through negligence arising on a ship (The Plymouth, 3 Wall. 20, 18 L.Ed. 125); or where a building on land was damaged by a ship's jib boom (Johnson v. Chicago & Pac. Elev. Co., 119 U.S. 388, 7 S.Ct. 254, 30 L.Ed. 447); or a drawbridge's pier was damaged by a ship (Cleveland Terminal & Valley R. Co. v. Cleveland S. S. Co., 208 U.S. 316, 28 S.Ct. 414, 52 L.Ed. 508, 13 Ann.Cas. 1215); or a dike was struck by a ship (The Panoil, 266 U.S. 433, 45 S.Ct. 164, 69 L.Ed. 366), it has been held to be insufficient to invoke admiralty jurisdiction.

■ Our inquiry here is the nature of the damage or thing injured and the location of the injury. The right to use this waterway is essentially maritime in character, although stemming from the ownership of riparian property. It is as essentially maritime as is the government's right to place a beacon along navigable waters in The Blackheath, supra. And this is so because it is concerned with the use of navigable waters for a maritime purpose. To be sure, the injury here is not inflicted by anything concerned with the sea. It is inflicted by a wrongful location of a sewer pipe. But this was placed in a locality—the bed of the stream—which was used for the purpose of navigation. As a practical matter, a maritime right is thus invaded by a pipe running from the land under an easement by virtue of which the sewer derives its right of passage through the old channel. In The Blackheath, supra, 25 S.Ct. 47, Justice Holmes said: "It seems more arbitrary than rational to treat attachment to the soil as a peremptory bar, outweighing the considerations that the injured thing was an instrument of navigation, and no part of the shore."

■ In The Raithmoor, supra, 36 S.Ct. 516, where destruction of a partially constructed beacon by a ship was held to support admiralty jurisdiction, it was observed that, "We regard the location and purpose of the structure as controlling. * * * It was not being built on shore and awaiting the assumption of a maritime relation." So here, the purpose of the right invaded is the exercise of a maritime relation. The right to a clear passage on a shipping channel is invaded by an injury "the substance and consummation" of which took place on navigable waters. It is not the source of the injury which is controlling but the nature and character of the thing injured or, as expressed in the words of injuries to

physical properties which are analogous to the instant case, it is the "location and purpose" which are controlling. We think the court of admiralty was properly invoked.

However, the question is presented as to whether or not in fact a tort or wrong was committed. Assuming that there was an easement granted to the appellee to lay the pipe and consent thereto was given by the War Department, appellee was required to lay the pipe in a trench in accordance with the permit of the War Department and the authority of the State. The easement granted by the State required the installation of the sewer pipe line in the same manner as the war department prescribed. We do not decide on this record whether or not the pipe was laid in a trench in conformity with the permit. If it was, the libel could not be sustained because the State has given its consent as had the Federal Government. A grant or consent to lay the pipe carried out as provided in the permit would foreclose objection by the appellant as a member of the public. Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. 421, 15 L.Ed. 435; Gilman v. Philadelphia, 3 Wall 713, 18 L.Ed. 96. A pipe line laid in accordance with such permits would not be a nuisance or an unlawful interference with navigation. Appellant's rights of access as a riparian owner were only of access to the navigable part of the stream in front of its premises. They were not interfered with by the pipe line because appellant could at all times reach the channel. Wisconsin v. Illinois, 278 U.S. 367, 49 S.Ct. 163, 73 L.Ed. 426; Shively v. Bowlby, 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331; City of New York v. Wilson & Co., 278 N.Y. 86, 102, 103, 15 N.E.2d 408. A pipe line laid in accordance with proper public authority so far as it impeded further navigation would not be actionable any more than the lawful construction of a bridge across a navigable stream would be. The riparian owner could not maintain a libel under such circumstances.

The prayer is for injunctive relief to abate the nuisance. To grant such relief would be an improper exercise of admiralty jurisdiction but an alternative decree may be entered for compensatory damages. Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989. The decrees will therefore be reversed and the cause remanded for determination of the question of whether or not the sewer pipe was laid in accordance with the per-

mit. If it was, the court below is directed to dismiss the libel; if it was not, the appellant may be awarded any special damages which it may establish because of interference with its rights of navigation.

Decree reversed.