### CAMPBELL v. H. HACKFELD & CO., Limited.

(Circuit Court of Appeals, Ninth Circuit. October 26, 1903.)

No. 942.

1. ADMIRALTY JURISDICTION—ACTION FOR TORT—LOCALITY OF INJURY.

The fact of locality alone does not give a court of admiralty jurisdiction of an action for a tort committed on the high seas or navigable waters, but it must further appear that the tort was maritime in character, having some relation to a vessel or its owners.

2. SAME—ACTION AGAINST STEVEDORE BY EMPLOYÉ.

An action against a contracting stevedore by an employé to recover for personal injuries sustained while discharging a vessel, through the alleged negligence of defendant or his other employés, is not within the admiralty jurisdiction, where no fault is charged against the vessel, her owners, officers, or crew.

Appeal from the District Court of the United States for the District of Hawaii.

J. J. Dunne and Gill & Farley (R. W. Breckone, of counsel), for appellant.

Kinney, McClanahan & Bigelow, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge

ROSS, Circuit Judge. This cause comes here on appeal from a decree of the District Court for the District of Hawaii sustaining an exception of the appellee to the jurisdiction of the court over the parties or the cause of action stated in the libel, and dismissing the libel, without prejudice, for want of jurisdiction.

The libelant was a stevedore, and the libelee a corporation engaged in the business of loading and unloading vessels at Honolulu. The libel shows that in pursuance of its business the libelee on the 26th

day of July, 1902, undertook to unload a cargo of coal from the Norwegian bark Aeolus, then anchored in navigable waters of the port of Honolulu, and that the libelant was one of the libelee's employés engaged in that work; that while so engaged in the hold of the vessel the libelant was, by reason of the carelessness of the libelee and of other of its employés, severely injured, for which injury he asked damages. Not only does the libel fail to allege anything against the ship, its owner, officers, or crew, but it affirmatively alleges "that the persons who were engaged in the unloading of said bark Aeolus were all employés of said defendant, and not members of the crew, or employés of said bark Aeolus, and not fellow servants of any capacity with any of the employés of said bark Aeolus."

Instances are numerous in which stevedores have maintained libels for injuries sustained by reason of defective machinery or appliances of the ship, or by reason of the negligence of its owner or of some of its officers or crew. Many of such cases are referred to in The Anaces, 93 Fed. 240, 34 C. C. A. 558, and in the briefs of counsel in the present case. But no case has been cited, and it is asserted by counsel that no case can be found, where a stevedore was allowed to maintain in a court of admiralty an action for damages, against the stevedore who employed him, for injuries sustained by reason of the negligence of the head stevedore, or of one or more of his other employés. The mere fact that no such case can be found in the books tends strongly to show that they are outside the acknowledged limit of admiralty cognizance over marine torts, for it would be little short of absurd to suppose that there have not been hundreds and hundreds of instances where stevedores have been injured in their work through the negligence of the contracting stevedore or of some of his employés. The Plymouth, 3 Wall. 20, 37, 18 L. Ed. 125; The Queen v. Judge of the City of London Court, Q. B. Div. vol. 28, 1892, pp. 273–298.

The fundamental principle underlying all cases of tort, as well as contract, is that, to bring a case within the jurisdiction of a court of admiralty, maritime relations of some sort must exist, for the all-sufficient reason that the admiralty does not concern itself with non-maritime affairs. In concluding his great opinion in the case of De Lovio v. Boit et al., 2 Gall. 398, 474, Fed. Cas. No. 3,776, Judge Story said:

"On the whole, I am, without the slightest hesitation, ready to pronounce that the delegation of cognizance of 'all civil cases of admiralty and maritime jurisdiction' to the courts of the United States comprehends all maritime contracts, torts, and injuries. The latter branch is necessarily bounded by locality. The former extends over all contracts, wheresoever they may be made or executed, or whatsoever may be the form of the stipulations, which relate to the navigation, business, or commerce of the sea."

Torts, as well as contracts, not maritime, are outside of admiralty cognizance.

It is quite true that in many of the decisions of the Supreme Court, as well as of the Circuit Courts of Appeals and of the Circuit and District Courts, the broad statement is made that in cases of tort the sole test of jurisdiction is locality; and that fact is made the

basis of a criticism of the decision of the court below in the present case, found in the Harvard Law Review for January, 1903 (16 Harv. Law Rev. 210, 211), in which it is said that that decision—

"Infringes a rule which originated in the very nature of admiralty jurisdiction, and which has been satisfactory in its practical operation. This test has been all but universally regarded as the sole one. See The Plymouth, supra. The single authority to the contrary is the somewhat obscurely stated dictum of a text-writer. Benedict, supra, 308. The principal case seems, then, at variance with the spirit of the previous cases, even though reconcilable with the points actually decided. Not only would the adoption of its doctrine unsettle a rule which has long been assumed to be law, but it would make the question of jurisdiction over torts subject to the difficulty which so often perplexes cases of contract, namely, the necessity of deciding in each case what is a maritime relation. The decision in the principal case seems, therefore, unfortunate, as increasing complication and uncertainty in the law, without, apparently, securing any practical gain to compensate for these disadvantages."

It is expressly admitted in this article that "in every instance which has been found, however, a maritime relation such as is required by the court" below, has in fact existed.

It is a cardinal rule that the language of every court must be construed with reference to the case made for decision, and should not be extended so as to embrace cases that could hardly have been within its contemplation when using the language. Take, for instance, the expression of the Supreme Court in the case of The Plymouth, supra, in respect to the point in question, where it is said, "Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." That language is quite as broad as, if not broader than, that used by any other court in any of the cases upon the subject, and, taken literally, would include within the jurisdiction of the admiralty court a very celebrated case that arose on the Bay of San Francisco in the year 1870, when A. P. Crittenden, a distinguished lawyer of California, was shot by Laura D. Fair on board the ferry steamer El Capitan, while making one of her trips from the Oakland Mole to her slip at San Francisco. But we think it would surprise the Supreme Court to be told that by saying, as it did in the Plymouth Case, that "every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance," it in effect decided that such a tort as Mrs. Fair committed on Crittenden fell within admiralty cognizance. If the language of the courts to the effect that locality is the sole test of admiralty jurisdiction in cases of tort is to be given the broad interpretation contended for by the appellant and by the Law Review referred to, then every case of battery committed by one passenger on another on board any ship anchored in navigable waters at any port or wharf is within the jurisdiction of the court having admiralty jurisdiction over the place. Such an interpretation is, in our opinion, wholly inadmissible, and such consequences very clearly show the danger of losing sight, in construing the language of a court, of the case about which it is speaking. In The Plymouth, for example, the case the court had for decision was one for damage done wholly on land, but in which

the cause of damage originated on water within the admiralty jurisdiction of the trial court. There flames from a steam propeller anchored in the Chicago river set fire to some packing houses on land, and for the damage thus done it was sought to maintain a suit in the admiralty court. One of the arguments in favor of the jurisdiction was that the vessel which communicated the fire to the buildings was a maritime instrument or agent, and hence characterized the nature of the tort, and made of it a maritime tort. The court held that to be a misapprehension, and it was in answer to that contention that it said, "The jurisdiction of the admiralty over maritime torts does not depend upon the fact that the injury was inflicted by the vessel, but upon the locality—the high seas or navigable waters—where it occurred," and immediately added the clause heretofore quoted: "Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance."

In this connection, we quote a few paragraphs from the opinion of Lord Esher, Master of the Rolls, delivered in a late case in England (hereinafter further referred to), where it was sought to maintain in a court of admiralty an action in personam against a pilot in respect of a collision between two ships on the high seas, caused by his negligence:

"It is said that there is a decision of Dr. Lushington in favor of the jurisdiction, and (merely to show the danger of taking words from a judgment without looking further) I will at once grapple with it. In The Sarah, Lush. 549, Dr. Lushington said at page 550: 'The court has original jurisdiction, because the matter complained of is a tort committed on the high seas.' There, it is said, is a declaration by Dr. Lushington that he had jurisdiction over all torts committed on the high seas. That case was decided in 1862; but if we turn to the earlier case of The Ida, Lush. 6, in which the subject-matter was the willful cutting of a bark adrift, whereby she capsized a barge which contained cargo, Dr. Lushington says at page 9: 'The court, however, is still further indisposed to exercise jurisdiction on account of the peculiar nature of the act for which the plaintiffs are now trying to render the defendant's ship liable. The court, it must be remembered, has never exercised a general jurisdiction over damage, but over causes of collision only.' Therefore, by what he said in The Sarah, Lush. 549, he really did not mean every tort committed on the high seas, but only wrongful collisions; and he limited himself in The Ida, Lush. 6, by saying, in effect, that the jurisdiction of the admiralty had never extended to all torts on the high seas." The Queen v. The Judge of the City of London Court, Queen's Bench Division, vol. 28, 1892, pp. 273, 292.

In the case of Insurance Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90, the Supreme Court pointed out that it had frequently been decided by that court—

"That the admiralty and maritime jurisdiction of the United States is not limited either by the restraining statutes or the judicial prohibitions of England, but is to be interpreted by a more enlarged view of its essential nature and objects, and with reference to analogous jurisdictions in other countries constituting the maritime commercial world, as well as to that of England."

And as to contracts (the case then before the court) said:

"The English rule, which concedes jurisdiction, with a few exceptions, only to contracts made upon the sea, and to be executed thereon (making locality the test), is entirely inadmissible, and that the true criterion is the

nature and subject-matter of the contract, as whether it was a maritime contract, having reference to maritime service or maritime transactions."

The locality test was there discarded as to contracts, because, as the jurisdiction conferred on the United States courts "comprehends all maritime contracts, torts, and injuries," the true criterion in the case then before the court was, not the place where the contract was made, but the nature and subject-matter of the contract— that is to say, whether it had reference to maritime service or maritime transactions.

In the case of torts, locality remains the test, for the manifest reason that, to give an admiralty court jurisdiction, they must occur in a place where the law maritime prevails. But this is by no means saying that a tort or injury in no way connected with any vessel, or its owner, officers, or crew, although occurring in such a place or territory, is for that reason within the jurisdiction of the admiralty. On the contrary, it is, as has been seen, only of maritime contracts, maritime torts, and maritime injuries of which the United States courts are given admiralty jurisdiction. These views are not in conflict with any decision brought to our notice, or that we have been able to find. They are not only, in our opinion, based on sound reason, but also find support in Benedict's Admiralty (3d Ed.) § 308, where that learned writer says:

"Cases of torts on the high seas, superaltum mare, have always been held, even in England, to be within the jurisdiction of admiralty. And the jurisdiction in such cases has usually been held to depend upon locality, embracing only civil torts and injuries done on the sea, or on waters of the sea where the tide ebbs and flows. It depends upon the place where the cause of action arises, and that place must be the waters which are subject to the admiralty jurisdiction. It may, however, be doubted whether the civil jurisdiction, in such cases of torts, does not depend upon the relation of the parties to a ship or vessel, embracing only those tortious violations of maritime right and duty which occur in vessels, to which the admiralty jurisdiction, in cases of contracts, applies. If one of several landsmen bathing in the sea should assault or imprison or rob another, it has not been held here that the admiralty would have jurisdiction of the action for the tort."

In the case of The Queen v. The Judge of the City of London Court, supra, which is a very much stronger case in favor of the jurisdiction claimed than is the case at bar, Lord Esher, M. R., in considering on what, under the English law, does the jurisdiction of the admiralty court depend, said:

"It does not depend merely on the fact that something has taken place on the high seas. That it happened there is, no doubt, irrespective of statute, a necessary condition for the jurisdiction of the admiralty court; but there is the further question, what is the subject-matter of that which has happened on the high seas? It is not everything which takes place on the high seas which is within the jurisdiction of the admiralty court. A third consideration is, with regard to whom is the jurisdiction asserted? You have to consider three things—the locality, the subject-matter of complaint, and the person with regard to whom the complaint is made. You must consider all these things in determining whether the admiralty court has jurisdiction."

The opinion of his lordship in the case cited is a very lucid and instructive one, and will well repay perusal.

We are of opinion that the ruling of the court below was right, that it is not in conflict with any previous decision of which we are aware, and that it in no way tends to unsettle any rule of admiralty, or to introduce into that branch of the law any complication or uncertainty.

The judgment is affirmed.