**Mary McGUIRE, Libellant,**

v.

**CITY OF NEW YORK, Respondent.**

United States District Court
S. D. New York.
March 30, 1961.

Edwin M. Bourke, New York City, for libellant.

Charles H. Tenney, Corp. Counsel, New York City, for respondent. James W. Fay, New York City, Meyer Weinstein, Brooklyn, N. Y., of counsel.

DAWSON, District Judge.

Resopondent's exception to the libel in this action raises the question as to whether the admiralty jurisdiction of this court extends to injuries suffered by a bather at a public bathing beach in New York City.

The libellant alleges in her libel that the respondent, The City of New York, owned a public bathing beach known as Midland Beach and invited the libellant to enjoy the waters of such beach in return for payment of a stipulated charge. It alleges that while libellant was lawfully in the waters at said public bathing beach she was caused to sustain an injury to her left hand "when it came into contact with a submerged object that protruded from the bottom."

The libel does not allege the citizenship of libellant. If diversity of citizenship were the basis of the action, there is doubt whether the libel could be sustained. However, libellant's proctor has brought the action as one in admiralty, apparently pursuant to the provisions of § 1333 of Title 28 U.S.C., giving the district courts original jurisdiction of "any civil case of admiralty or maritime jurisdiction."

The exception to the libel is on the ground that the facts averred in the libel do not constitute a cause of action within the admiralty and maritime jurisdiction of this court. This, therefore, presents the very clear question as to whether an injury to a bather at a public bathing beach, occasioned by the negli-

gence of the proprietor of the bathing beach, constitutes a cause of action cognizable in admiralty. Midland Beach, where the accident is alleged to have occurred, is on the edge of Staten Island in New York Harbor. The waters adjacent to Midland Beach may be deemed to be navigable waters, although whether they are navigable, in the ordinarily accepted sense of the word, at the point where a person might be swimming, might be questionable.[1] However, we need not consider that point. The more important question is whether the libel alleges such matters as to allow the action to be brought in admiralty. Libellant takes the position that any tort which occurs in navigable waters is cognizable in admiralty. The Court is unable to agree with this contention.

The Supreme Court has pointed out that "the precise scope of admiralty jurisdiction is not a matter of obvious principle or of very accurate history." The Blackheath, 1904, 195 U.S. 361, 25 S.Ct. 46, 47, 49 L.Ed. 236. The Court recognized that English and French law was the basis of admiralty jurisdiction.

In the ancient French admiralty court, the maritime nature of a dispute was the test of jurisdiction in both contract and tort cases. See French Maritime Ordinances of 1400, 1517 and 1681, found in Cleirac, Us et Coutumes de la Mer, 191 (1788); 1 Valin, Ordonnance de la Marine, 112, 120, 124, 138, 140, 143 (1776). Like the French courts, the English admiralty exercised jurisdiction over all disputes of a maritime nature. 1 Twiss, Black Book of the Admiralty, 68, 69, 83 (1871). Both courts drew on the laws of Oleron as a basic source. See generally, Note, 25 Harv.L.Rev. 381 (1912).

Just before the turn of the century, an English court considered the issue which is directly put in this case. The Queen v. The Judge of the City of London Court, [1892] 1 Q.B. 273. The well-reasoned opinion arrived at the following conclusion:

"* * * On what does the jurisdiction of the Admiralty Court depend? It does not depend merely on the fact that something has taken place on the high seas. That it happened there is, no doubt, irrespectively of statute, a necessary condition for the jurisdiction of the Admiralty Court; but there is the further question, what is the subject-matter of that which has happened on the high seas? It is not everything which takes place on the high seas which is within the jurisdiction of the Admiralty Court. A third consideration is, with regard to whom is the jurisdiction asserted? You have to consider three things— the locality, the subject-matter of complaint, and the person with regard to whom the complaint is made. You must consider all these things in determining whether the Admiralty Court has jurisdiction. * * * But, if any of the three matters is wanting, the Admiralty Court may not have jurisdiction." Id. at 294–295.

Soon thereafter, apparently on the authority of The City of London case, the Ninth Circuit reached a similar conclusion. Campbell v. H. Hackfeld & Co., 9 Cir., 1903, 125 F. 696. The Court stated the question as follows:

"The fundamental principle underlying all cases of tort, as well as con-

---

1. Navigable waters are quite often tested by whether they are, in fact, navigable, i. e., whether a boat could travel there. The place where libellant was injured probably was not sufficiently deep to make it, in fact, navigable. See, Jeffers v. Foundation Co., 2 Cir., 1936, 85 F.2d 24 (diver injured while assisting in the building of a foundation for a pier. Caisson submerged in river not within navigable waters since area had been permanently withdrawn from the river. Case turned on fact that since a boat could not travel where the plaintiff injured, he was not injured in navigable waters). However, these nice distinctions have been abandoned since the days when the courts were concerned with the ebb and flow of the tide.

tract, is that, to bring a case within the jurisdiction of a court of admiralty, maritime relations of some sort must exist, for the all-sufficient reason that the admiralty does not concern itself with non-maritime affairs. * * *" Id. at page 697.[2]
After reviewing the cases and studying The City of London, the Court concluded:

"In the case of torts, locality remains the test, for the manifest reason that, to give an admiralty court jurisdiction, they must occur in a place where the law maritime prevails. But this is by no means saying that a tort or injury in no way connected with any vessel, or its owner, officers, or crew, although occurring in such a place or territory,

2. The specific holding in Hackfeld has been overruled. The narrow holding of the case was that the employment of a stevedore was not of a maritime nature. This has been overruled by Atlantic Transport Co. v. Imbrovek, 1914, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208 and Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. Since those cases were decided it is established that a stevedore properly comes within maritime jurisdiction. However, the broad holding of the case, that is, that admiralty jurisdiction requires that the subject matter be of a maritime nature, remains.

3. In addition to the requirement of locality, there is a continuing undercurrent which requires that the controversy have a maritime nexus. The tort must arise from a maritime transaction, or be of a maritime nature, or deal with a maritime subject matter. As far as this Court is able to determine, all the cases in which admiralty jurisdiction has been accepted, have in fact dealt with a maritime subject matter. See, Note, 16 Harv.L. Rev. 210 (1903).

The requirement of maritime nature has been an underlying hypothesis. De Lovio v. Boit, D.Mass.1815, 2 Gall. 398, 399, Fed.Cas.No.3,776 (" 'Admiralty' and 'maritime jurisdiction' * * * include jurisdiction of all things done upon and relating to the sea, or, in other words, all transactions and proceedings relative to commerce and navigation, and to damages or injuries upon the sea * * *.").

The Courts have persistently returned to the search for "maritime nature" in

is for that reason within the jurisdiction of the admiralty. On the contrary, it is, as has been seen, only of maritime contracts, maritime torts, and maritime injuries of which the United States courts are given admiralty jurisdiction. * *" Id. at page 700.
See generally, 16 Harv.L.Rev. 210 (1903).

■ While it has been urged that admiralty has jurisdiction over all torts where the wrong takes place on the high seas or other public navigable waters of the United States, this position has not been adopted either by the text writers or by the courts. The basis for admiralty jurisdiction must be a combination of a maritime wrong and a maritime location.[3] A maritime wrong generally

admiralty cases, e. g., cases involving damage to beacons; The Blackheath, 1904, 195 U.S. 361, 367–368, 25 S.Ct. 46, 49 L.Ed. 236; The Raithmoor, 1916, 241 U.S. 166, 176–177, 36 S.Ct. 514, 60 L.Ed. 937. Jones Act cases, O'Donnell v. Great Lakes Dredge & Dock Co., 1943, 318 U.S. 36, 41–43, 63 S.Ct. 488, 87 L.Ed. 596; Swanson v. Marra Bros. Inc., 1946, 328 U.S. 1, 4–5, 66 S.Ct. 869, 90 L.Ed. 1045; see, Kyriakos v. Goulandris, 2 Cir., 1945, 151 F.2d 132 (assault on shore related to provocation on vessel recoverable under Jones Act, 46 U.S. C.A. § 688); cases to recover damages for personal injuries arising from breach of warranty and false imprisonment, Strika v. Netherlands Ministry of Traffic, 2 Cir., 1950, 185 F.2d 555, 558; Castillo v. Argonaut Trading Agency, Inc., D.C.S.D.N.Y.1957, 156 F.Supp. 398, 400. Cf., cases involving state workmen's compensation statutes, Millers' Indem. Underwriters v. Braud, 1926, 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470; Sultan Ry. & Timber Co. v. Department of Labor & Industries, 1928, 277 U.S. 135, 48 S.Ct. 505, 72 L.Ed. 820; Grant Smith-Porter Ship Co. v. Rohde, 1922, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321; Alaska Packers Ass'n v. Industrial Acc. Comm., 1928, 276 U.S. 467, 48 S.Ct. 346, 72 L.Ed. 656. Cf., cases in which admiralty jurisdiction was denied because damage was to an object lacking a maritime nature, i. e., and aid to land commerce. Martin v. West, 1911, 222 U.S. 191, 197, 32 S.Ct. 42, 56 L.Ed. 159; Cleveland Terminal & Valley R. R. Co. v. Cleveland S.S. Co., 1908, 208 U.S. 316,

has been concluded to be one which in some way is involved with shipping or commerce. The locality test was first laid down in The Plymouth, 1866, 3 Wall. 20, 70 U.S. 20, 18 L.Ed. 125, where the Court said in part:

> "It is admitted by all the authorities that the jurisdiction of the admiralty over marine torts depends upon locality—the highseas, or other navigable waters within admiralty cognizance. * * *
>
> * * * * * *
>
> "The jurisdiction of the admiralty over maritime torts does not depend upon the wrong having been committed on board the vessel, but upon its having been committed upon the high seas or other navigable waters."

Today the locality test is well established in the law. Kermarec v. Compagnie Generale Transatlantique, 1959, 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550; Netherlands American Steam Nav. Co. v. Gallagher, 2 Cir., 1922, 282 F. 171. See Forgione v. United States, 3 Cir., 1953, 202 F.2d 249.

The libellant seeks to use the holding in The Plymouth and the other locality cases to support her contention that any tort occurring on navigable waters is a maritime tort and thus properly within admiralty jurisdiction. She seeks, thereby, to use the locality test as a means of extending admiralty jurisdiction. But this argument is taken out of context. The test was developed as a rule of limitation, as a means of limiting the scope of admiralty jurisdiction. This is made very clear by the Court in The Plymouth itself and later noted in The Blackheath, 1904, 195 U.S. 361, 367, 25 S.Ct. 46, 49 L.Ed. 236. See, Note, 25 Harv.L.Rev. 381 (1912). That the locality test initially was and continues to be a rule of exclusion or limitation, is recognized by the Supreme Court. Lon-

don Guarantee & Accident Co. v. Industrial Accident Commission, 1929, 279 U. S. 109, 123–124, 49 S.Ct. 296, 73 L.Ed. 632. See Note, 18 Harv.L.Rev. 299 (1905).

The broadly stated principle of The Plymouth has not survived the years unsullied. In 1909, Henry Billings Brown said:

> "Whether the word 'tort' as thus used includes every act within the common law definition of the word, or is confined to such as are in some way connected with the equipment, navigation or discipline of the ship, has not been judicially decided. The former definition would cover every wrongful act done upon navigable waters, such as an assault by one passenger upon another, or an injury suffered by one through the negligence of another, and make locality the sole test of jurisdiction. The latter would limit it to torts committed by the officers or crew in conducting the navigation or enforcing the discipline of the ship. The broader use is within the letter of the definition, but it may well be doubted whether, for example, a libel or a slander put in circulation on board a ship, could be made the basis of a suit in admiralty. * * *"

Brown, Jurisdiction of the Admiralty in Cases of Tort, 9 Colum.L.Rev. 1, 8 (1909).

By 1924 the question was still undecided. Hough, Admiralty Jurisdiction— Of Late Years, 37 Harv.L.Rev. 529, 532 (1924). What has been called "Mr. Benedict's celebrated doubt" has continued through the succeeding editions of Benedict on Admiralty.

> "It has nevertheless been doubted whether the civil admiralty jurisdiction, in cases of tort, does not depend upon the relation of the parties to some ship or vessel and embrace only

---

28 S.Ct. 414, 52 L.Ed. 508; Duluth & Superior Bridge Co. v. Steamer "Troy", 1908, 208 U.S. 321, 28 S.Ct. 416, 52 L.Ed. 512; The Poughkeepsie, D.C.S.D.

N.Y., 162 F. 494, affirmed per curiam, 1908, 212 U.S. 558, 29 S.Ct. 687, 53 L. Ed. 651. See generally, Note, 75 U.Pa. L.Rev. 655 (1927).

those tortious violations of maritime right and duty which occur in relation to vessels to which the admiralty jurisdiction in cases of contract applies. If one of several landsmen bathing in the sea should assault or imprison or rob another, it has not been held that admiralty would have jurisdiction of an action for the tort." 1 Benedict, op. cit. supra, § 127.

See, Sprague & Healy, Cases on Admiralty, p. 54 (3rd ed. 1950).

Professor Black points out the essence of objection to the locality test:

"But the 'test' is subject to the much more fundamental objection that it refers, however imperfectly, to arbitrary locality rather than to the real and practical relation with the business and commerce of the sea." Black, Admiralty Jurisdiction: Critique and Suggestions, 50 Colum.L.Rev. 259, 264 (1950).

Black suggests that the proper allocation of admiralty jurisdiction to contracts and torts might be:

"(1) In contract, all those cases involving the enforcement, policing, or adjustment of business arrangements as a practical matter primarily concerned with sea, lake, and river transport. (2) In tort, all those cases seeking relief for tortious conduct with respect to the subject-matter of (1), or for injuries by or to vessels or other maritime objects, or injuries to persons taking place in connection with the conduct of the business of shipping. * * *" Id. at 274.

Later, in their often definitive text, Professors Gilmore and Black say:

"It seems to be still unsettled whether any tort whatever, occurring on navigable waters, is within the jurisdiction. Certainly, the courts have used language broad enough to support this conclusion. 'Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance.' The Plymouth, 70 U.S. (3 Wall.) 20, 36 (1866) [18 L.Ed. 125]. But in the Imbrovek case * * * it was left open whether the maritime employment of the libellant was a needful element of his right to access to admiralty." Gilmore & Black, Admiralty, p. 22 (1957).

■ That a tort may have occurred on navigable waters is merely a prima facie test of admiralty jurisdiction. Sidney Blumenthal & Co. v. United States, 2 Cir., 1929, 30 F.2d 247. See Atlantic Transport Co. v. Imbrovek, 1914, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208.[4] Not every tort committed on admiralty waters may be redressed in the admiralty courts. Only those which have a maritime character, which deal with a maritime subject matter, are properly within admiralty jurisdiction. Admiralty jurisdiction originates from the early customs of the sea which were adopted

---

4. In Atlantic Transport Co. v. Imbrovek, 1914, 234 U.S. 52, 34 S.Ct. 733, 58 L. Ed. 1208, the Court had before it the direct question of whether in addition to locality a tort must otherwise be of a maritime nature. This was the contention of one of the parties. Declining to decide the specific issue, the Court encompassed the question within their holding:

"Even if it be assumed that the requirement as to locality in tort cases, while indispensable, is not necessarily exclusive, still in the present case the wrong which was the subject of the suit was, we think, of a maritime nature, and hence the district court, from any point of view, had jurisdiction. * * *" 234 U.S. at page 61, 34 S.Ct. at page 735.

"If more is required than the locality of the wrong in order to give the court jurisdiction, the relation of the wrong to maritime service, to navigation, and to commerce on navigable waters, was quite sufficient." Id. at page 63, 34 S.Ct. at page 735.

Thus Imbrovek left the matter of whether maritime nature was a prerequisite to a maritime tort, an open question. See, Norris, Maritime Personal Injuries, § 75 (1959).

in principle as law by commercial peoples. Admiralty was the result of commerce on the high seas; the commerce made possible by sailing vessels. Just as vessels were the source of admiralty, they remain the focal point of admiralty jurisdiction. In very general terms, admiralty jurisdiction relates to things occurring on or to vessels or as a result of the employment of vessels. As Robinson has said:

"Transactions are maritime only when connected with 'a vessel'." Robinson, Admiralty, § 8 (1939).

He continues:

"Merely because events occur upon navigable waters does not put them within the admiralty and maritime jurisdiction. Transactions are 'maritime' only when in some way connected with a 'vessel' * * *." Ibid.

Again, Robinson says:

"The admiralty tort, on the property side, is a negligent injury to a 'maritime' object which occurs on 'admiralty waters'.

"The most obvious maritime object is a vessel. * * *" Robinson, op. cit. supra, § 9.

And in Benedict on Admiralty, it is said:

"Maritime causes naturally center around the ship, the great agent of maritime enterprise and affairs. * * *" 1 Benedict, Admiralty § 61 (6th ed. 1940).

This opinion that the finding of some relationship to a vessel be a prerequisite to admiralty jurisdiction is not held solely by the commentators. The cases, with varying degrees of specificity, have adopted the necessity of a vessel as part of their permanent background. Hoof v. Pacific American Fisheries, 9 Cir., 1922, 279 F. 367; Reinhardt v. Newport Flying Serv. Corp., Ct.App.1921, 232 N.Y. 115, 133 N.E. 371, 18 A.L.R. 1324. See, Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143. See also, Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 97, 99, 66 S.Ct. 872, 90 L.Ed. 1099.

Admiralty law is, in fact, the law of commerce. It was engendered as a result of the needs of commerce and flourished because of those same needs. Where it was feared that local ordinances or decisions might unduly impinge on international or interstate commerce, local statutes were held inapplicable in the face of the need for uniformity in maritime law. The touchstone has been whether the action, tort for example, was not merely one of local concern but was in fact a thing having an intimate relation with navigation and interstate and foreign commerce. Robins Dry Dock & Repair Co. v. Dahl, 1925, 266 U.S. 449, 457, 45 S.Ct. 157, 69 L.Ed. 372; Panama R. R. Co. v. Johnson, 1924, 264 U.S. 375, 386, 44 S.Ct. 391, 68 L.Ed. 748; Hartford Life Ins. Co. v. Douds, 1923, 261 U. S. 476, 481, 43 S.Ct. 409, 67 L.Ed. 754. If that was the case then admiralty was held to have sole and exclusive jurisdiction.

Admiralty jurisdiction as a protective companion to commerce has grown with the needs of commerce and retained a marked degree of flexibility. It is proper that admiralty jurisdiction be extended where commercial necessity so dictates. Morrison, The Remedial Powers of the Admiralty, 43 Yale L.J. 1, 36–38 (1933). But the guide to admiralty jurisdiction must be the needs of the sea or the needs of seagoing commerce.

The proper scope of jurisdiction should include all matters relating to the business of the sea and the business conducted on navigable waters.

The libel in this case does not relate to any tort which grows out of navigation. It alleges an ordinary tort, no different in substance because the injury occurred in shallow waters along the shore than if the injury had occurred on the sandy beach above the water line. Whether the City of New York should be held liable for the injury suffered by libellant is a question which can easily be determined in the courts of the locality. To endeavor to project such an action into the federal courts on the ground of admiralty jurisdiction is to

misinterpret the nature of admiralty jurisdiction.

■ The exception to the libel is sustained and the libel is dismissed as not being within the jurisdiction of this court. So ordered.