Hylas N. HASTINGS, Libellant,

v.

Carl D. MANN, t/a Mann's Harbor Marina, Mann's Harbor, North Carolina, Respondent.

No. 283.

United States District Court
E. D. North Carolina,
Elizabeth City Division.

March 5, 1964.

LeRoy, Wells & Shaw, Elizabeth City, N. C., Vandeventer, Black, Meredith & Martin, Norfolk, Va., for libellant.

Aydlett & White, Elizabeth City, N. C., Kellogg & Weathers, Manteo, N. C., for respondent.

LARKINS, District Judge.

## SUMMARY

This is an action in admiralty brought to recover damages for personal injuries allegedly sustained by libellant while he was standing on respondent's boat ramp attempting to launch a small outboard motorboat. The respondent has filed an exception to the libel and a motion to dismiss on the ground that the cause does not come within admiralty jurisdiction. Both parties have submitted memoranda pursuant to the motion and, at the request of the court, they have stipulated as to the description and construction of the boat ramp. A photograph of the ramp was also submitted.

Having fully considered the pleadings, briefs, and stipulations, the court makes the following

## FINDINGS OF FACT

At the time of the accident the respondent was a resident and citizen of the State of North Carolina, and traded as Mann's Harbor Marina at Manns Harbor, North Carolina.

On or about April 19, 1963, the libellant paid to the respondent one dollar ($1.00) for the use of respondent's boat ramp to launch libellant's outboard motorboat. The ramp sloped and was partially submerged by the waters of Pamlico Sound, a navigable body of water. Libellant was standing on the ramp in the water to launch his boat at which time he fell and was injured. He alleges that his injury was caused by the unsafe condition of the ramp.

The following stipulations which the litigants entered into are adopted as facts by the court:

1. The ramp is constructed of creosoted lumber lying on the ground on the respondent's property, and extends to and beyond the shore line into the water along the bottom approximately seven to eight feet depending upon the tide, the extreme end of the ramp under the water being about four feet below the surface of the water depending upon the tide.

2. The ramp is flush and level with the ground attached to sills buried into the ground.

3. The ramp does not float with the tide but is bolted and attached to the ground with stobs and creosote posts.

4. The ramp is used to accommodate boat trailers which are backed onto the ramp by automobiles or trucks.

The sole question for the court is: Do these facts, as alleged and stipulated, constitute a claim upon which relief can be granted within the jurisdiction of admiralty?

## CONCLUSIONS OF LAW

In 2 Am.Jur.2d Admiralty § 82 the following summary is made:

"Except in the case of death resulting from the tort, the general rule is that the place where the injury or damage occurred, not where the tort occurred, determines whether it occurred on navigable waters or on land. For the purpose of determining admiralty jurisdiction, the tort is deemed to occur, not where the wrongful act or omission has its inception, but where the impact of the act or omission produces such injury as to give rise to a cause of action. The locality to be considered is that of the thing injured, not that of the agency causing the injury. Where, for example, a floating vessel is damaged by a structure on the land, as in a collision with a drawbridge, the tort is maritime. Conversely, admiralty is without jurisdiction in case of tortious injury to persons or tortious damage to property, where the consummation of the tort is on the land though it may have originated on the water, except as this rule is modified by the Admiralty Jurisdiction Extension Act of 1948."

Section 84 sets forth this observation:

"Docks and wharves are considered to be extensions of the land to which they are attached, so that admiralty ordinarily has no juris-

diction of a tort that occurs on a dock or a wharf, or any other extension of the land. * * * "

2 C.J.S. Admiralty § 62a reads, in part, as follows:

" * * * A suit for an injury on land, as where an injury is sustained on a wharf or dock or on a gangplank by a person leaving the dock, or in an excavation under water, is without the jurisdiction of admiralty. * * * "

What the court is faced with here is the legal construction and treatment of a boat ramp. As the stipulations point out, the boat ramp in question is made from lumber, extending from the shore line on a downward incline into the water. The libellant was standing on the ramp and in the water when he fell, evidently hitting the ramp, although there is no allegation to that effect.

A boat ramp, like a wharf, dock, pier, or landing, is an extension of the land. It is fixed and immovable and is usually bolted or fastened securely to the land. Its purpose, of course, is to extend the land into the water at a slight grade in order to accommodate vehicular boat trailers which are backed or rolled thereon.

In Netherlands American Steam Navigation Company v. Gallagher, 282 Fed. Rep. 171 (1922), the court stated:

"The injury to the plaintiff happened on the wharf—in other words, upon the land; for it is clearly established that wharves and bridges, being fixed and immovable, are a part of the land to which they are attached, whether they project over the water or not. Injuries done upon them are not maritime torts; consequently they are not within the admiralty jurisdiction, because not done upon the sea. The Rock Island Bridge, 6 Wall. 213, 18 L.Ed. 753; The Neil Cochran, 1 Brown's Adm. 162, Fed.Cas. No. 7,996; The Ottawa, Brown's Adm. 356, Fed.Cas. No. 10,616. In the Rock Island Bridge Case the court held that,

though bridges and wharves may.aid commerce by facilitating intercourse on land, or the discharge of cargoes, they constitute no part of the high seas or navigable waters, and no maritime lien can arise with reference to them, as in the case of vessels, steamers, and rafts, and upon goods and merchandise thereon."

So it is with a boat ramp. Because it is built to the land, fixed and immovable, it is considered to be a part of the land to which it is attached, even though it is partially submerged in navigable waters. True, the boat ramp facilitates the launching and docking of pleasure craft, but it is constructed principally to receive and accommodate land carriers, mainly, boat trailers. In this respect boat ramps are analogous to wharves which are constructed to handle fork-lifts, tow-motors, and other vehicles used for loading and unloading.

"The dividing line between the admiralty and the common-law jurisdiction is correctly stated in Benedict's Admiralty (4th Ed.) § 232. It is there pointed out that the American courts have drawn the dividing line according to the locality where the substance and consummation of the injury has occurred. * * * " Netherlands American Steam Navigation Company v. Gallagher, supra.

The locality test is well entrenched in the law today. In McGuire v. City of New York, D.C., 192 F.Supp. 866 (1961), Judge Dawson said:

"The basis for admiralty jurisdiction must be a combination of a maritime wrong and a maritime location. A maritime wrong generally has been concluded to be one which in some way is involved with shipping or commerce. * * * "

In the instant case the injury allegedly occurred while libellant was standing on the boat ramp in a few feet of water. Thus, the locality of the tort was on land or an extension thereof. No maritime wrong has occurred here,

and the fact that libellant was standing in navigable waters is of little import. In McGuire v. City of New York, supra, the court stated,

"Libellant takes the position that any tort which occurs in navigable waters is cognizable in admiralty. The Court is unable to agree with this contention."

In this same opinion, 192 F.Supp. at page 871, the district court gave this summary:

"Admiralty law is, in fact, the law of commerce. It was engendered as a result of the needs of commerce and flourished because of those same needs. Where it was feared that local ordinances or decisions might unduly impinge on international or interstate commerce, local statutes were held inapplicable in the face of the need for uniformity in maritime law. The touchstone has been whether the action, tort for example, was not merely one of local concern but was in fact a thing having an intimate relation with navigation and interstate and foreign commerce. Robins Dry Dock & Repair Co. v. Dahl, 1925, 266 U.S. 449, 457, 45 S.Ct. 157, 69 L.Ed. 372; Panama R. R. Co. v. Johnson, 1924, 264 U.S. 375, 386, 44 S.Ct. 391, 68 L.Ed. 748; Hartford Life Ins. Co. v. Douds, 1923, 261 U.S. 476, 481, 43 S.Ct. 409, 67 L.Ed. 754. If that was the case then admiralty was held to have sole and exclusive jurisdiction.

"Admiralty jurisdiction as a protective companion to commerce has grown with the needs of commerce and retained a marked degree of flexibility. It is proper that admiralty jurisdiction be extended where commercial necessity so dictates. Morrison, The Remedial Powers of the Admiralty, 43 Yale L.J. 1, 36–38 (1933). But the guide to admiralty jurisdiction must be the needs of the sea or the needs of seagoing commerce."

This libel has no relation to a tort which arises out of navigation. It alleges an ordinary tort, just as if libellant had fallen on that part of the ramp above the water line. Thus, this action is not cognizable in admiralty and is without the maritime jurisdiction.

## ORDER

Therefore, it is ORDERED that the exception to the libel be, and it is sustained and the motion to dismiss the libel is allowed.

It is further ORDERED that the foregoing shall constitute the findings of fact, conclusions of law and order for Decree in this action.

Proctors for the respondent will submit a proposed Decree in accordance with this Opinion.

The Clerk is directed to serve a copy hereof upon all proctors of record.