**Juan Garcia CARABALLO, Plaintiff,**

v.

**AUTORIDAD de LOS PUERTOS de PUERTO RICO, Defendant.**

**Civ. No. 74-216.**

United States District Court,
D. Puerto Rico.

Aug. 8, 1974.

Nachman, Feldstein & Gelpi, San Juan, P. R., for plaintiff.

---

Geigel, Silva, Soler, Favale & Arroyo, Santurce, P. R., for defendant.

## OPINION AND ORDER

TOLEDO, Chief Judge.

The facts of this admiralty case are as follows:

It appears from the complaint that plaintiff Juan Garcia Caraballo, on or about January 21, 1974, was a passenger for hire on a vessel used for the transportation of passengers across the harbor of San Juan, between the Municipalities of San Juan and Cataño. Said vessel was owned and operated by the Ports Authority of Puerto Rico (Autoridad de los Puertos de Puerto Rico), a public corporation organized under the Laws of the Commonwealth of Puerto Rico and having legal capacity to sue and be sued.

Plaintiff was about to debark from defendant's vessel at the terminal in Cataño, and while allegedly conducting himself in a proper manner his foot was injured; crushed between the gangway and the vessel.

In Paragraphs 5 and 7 of his complaint, plaintiff mentions the controversy which gave rise to this case. Such Paragraphs read as follows:

"Fifth: At all times pertinent hereto, the defendant was under a duty to provide plaintiff with a safe and seaworthy vessel, appliances, appurtenances, equipment and crew, and to maintain the same in a safe and seaworthy condition.

Seventh: The aforesaid occurrence and resulting injuries to plaintiff were directly caused by the carelessness and negligence of the defendant, its agents, servants and or employees, in failing to supply plaintiff with a safe and seaworthy vessel, appliances, appurtenances, equipment and crew, in failing to provide plaintiff with same means of egress from the vessel; in failing to properly secure the only means of egress from the vessel; in failing to inspect the vessel's only means of egress prior to the debarkation of passengers; in failing to warn the plaintiff to exercise due care and caution to prevent the happening of the occurrence."

Upon receipt of the complaint, defendant filed a motion to dismiss. Said motion contains two basic allegations: First, that from the facts alleged it appears that plaintiff was not at the ship service, nor was he performing any work traditionally performed by crew members; and, second, that the doctrine of seaworthiness is not applicable to a passenger. Kermarec v. Compagne Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); McDaniel v. The M/S Lisholt, 257 F.2d 538 (2 Cir. 1958); Lee v. Pure Oil Company, 218 F.2d 711 (6 Cir. 1955).

Plaintiff answered arguing that although he cannot be considered as a seaman, longshoreman or cargo, to which doctrine of seaworthiness is applicable, his complaint alleges negligence (Paragraph 7) and breach of the contract of transportation (Paragraph 13).

■ While this Court agrees that the doctrine of seaworthiness has not yet been extended to include passengers for hire, the mere allegation of unseaworthiness does not defeat this present cause of action. An analysis of the facts presented demonstrates this is an action in negligence and not one for breach of warranty of seaworthiness.[1]

---

1. Title 28, United States Code, Section 1333; also see Title 46, United States Code, Section 740, which in part reads as follows:
   "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to a person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." See also Executive Jet Aviation v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633.

The jurisdiction of an admiralty court over a maritime tort originally depended on the *locality rule*.[2]

This gave rise to what the court named in the *McGuire* case, supra, "Mr. Benedict's celebrated doubt".

"It has nevertheless been doubted whether the civil admiralty jurisdiction, in cases of tort, does not depend upon the relation of the parties to some ship or vessel and embrace only those tortious violations of maritime right and duty which occurs in relation to vessels to which the admiralty jurisdiction in cases of contract applies. . ."[3]

The *McGuire* case, supra, discusses whether or not the locality test by itself should be the sole factor in the determination of admiralty jurisdiction. It concludes rejecting this proposition by stating on page 868:

"While it has been urged that admiralty has jurisdiction over all torts where the wrong takes place on the high seas or other public navigable waters of the United States, *this position has not been adopted either by the text writers or by the courts*. The basis for admiralty jurisdiction *must be a combination of a maritime wrong and a maritime location*. A maritime wrong generally has been concluded to be one which in some way is involved with shipping or commerce." (Emphasis added).

The Court concluded that the proper scope of jurisdiction should include all matters relating to the business of the sea and the business conducted on navigable waters.[4]

In Executive Jet Aviation v. City of Cleveland, supra, the Supreme Court held that the fact an alleged wrong occurred over navigable waters is not in itself sufficient to make an aviation negligence into a maritime tort and points to the serious difficulties which arise from the sole application of the locality test to determine jurisdiction.[5]

Following this pronouncement, the Court of Appeals for the Fifth Circuit, in Watz v. Zapata Off-Shore Company, 431 F.2d 100, 111 (5 Cir. 1970), adopted and applied the criteria set forth by the Supreme Court by saying:

"The tort in this case seems sufficiently related to maritime affairs and commerce to satisfy most demands."

In Rubin v. Power Authority of State of New York, 356 F.Supp. 1169, 1171 (W.D.N.Y.1973), the Court after citing Executive Jet Aviation v. City of Cleveland, supra, concluded:

"The Court's comments lead to the conclusion that in the instant case satisfaction of the locality test is insufficient to sustain admiralty jurisdiction, and that it must also be shown that the tortious acts alleged in the complaints bear 'a significant relationship to traditional maritime activity.' "

2. The case of McGuire v. City of New York, 192 F.Supp. 866 (S.D.N.Y.1961), states on page 869:
"The locality test was first laid down in The Plymouth, 1866, 3 Wall. 20, 70 U.S. 20, 18 L.Ed. 125, where the Court said in part:
'It is admitted by all the authorities that the jurisdiction of the admiralty over marine torts depends upon locality—the highseas, or other navigable waters within admiralty cognizance. * * *
'The jurisdiction of the admiralty over maritime torts does not depend upon the wrong having been committed on board the vessel, but upon the high seas or other navigable waters.' "

3. McGuire, supra, at 869–870, citing 1 Benedict. op. cit. Section 127.

4. McGuire v. City of New York, supra, at 871.

5. Executive Jet Aviation v. City of Cleveland, supra, 409 U.S. pp. 253–261, 93 S.Ct. 493. On page 261, 93 S.Ct. on page 501 the Court stated:
"In sum, there has existed over the years a judicial, legislative, and scholarly recognition that, in determining whether there is admiralty jurisdiction over a particular tort or class of torts, reliance on the relationship of the wrong to traditional maritime activity is often more sensible and more consonant with the purposes of maritime law than is a purely mechanical application of the locality test."

■■ In the case at bar, the facts alleged in the complaint are sufficient to invoke this Court's admiralty jurisdiction. Not only the wrong occurred aboard a vessel while in navigable waters,[6] but there is also an intimate relationship between the tort and the traditional maritime action of transporting passengers for hire.

■ We now address the question of whether or not the waters of the San Juan Harbor are navigable waters under the control of the United States. We have already defined the term navigable waters. This term includes bays.[7]

■ By virtue of the Federal Relations Act, Title 48, United States Code, Section 749,[8] Congress placed under the control of the Commonwealth of Puerto Rico the harbor areas and navigable streams and bodies of waters. In that same Section it is stated that all the Laws of the United States for the protection and improvement of navigable waters of the United States and the preservation of navigation and commerce except so far the same may be locally inapplicable, shall apply to Puerto Rico and its waters.

The case of Guerrido v. Alcoa Steamship Co., Inc., 234 F.2d 349 (1 Cir. 1956), was based on the application of substantive maritime law to Puerto Rico through the Foraker and Jones Acts concluded that under the present relationship between Puerto Rico and the United States, Congress while conferring power to the insular legislature to deal with this field, intended that the rules of admiralty and maritime law of the United States be presently in force in the navigable waters of the United States in and around the Island of Puerto Rico to the extent that they are not locally inapplicable either because they were not designed to apply to Puerto Rico waters or because they are inconsistent with the Puerto Rican legislation. The facts of the case at bar are not covered by either of these two exceptions.

In view of the foregoing, defendant's motion to dismiss is hereby denied.

It is so ordered.

6. Navigable waters are quite often tested by whether they are, in fact, navigable, i. e. whether a boat could travel there, regardless of whether they are influenced by the tide, are landlocked or open, or are salt or fresh. 2 Am.Jur.2d Section 23, Navigable Waters.

7. Id. See also Benedict on Admiralty, Vol. I, Section 42 (6th Edition, 1942).

8. 749. *Harbors and navigable waters transferred*
"The harbor areas and navigable streams and bodies of water and submerged lands underlying the same in and around the island of Puerto Rico and the adjacent islands and waters, owned by the United States on March 2, 1917, and not reserved by the United States for public purposes, are placed under the control of the government of Puerto Rico, to be administered in the same manner and subject to the same limitations as the property enumerated in sections 747 and 748 of this title. All laws of the United States for the protection and improvement of the navigable waters of the United States and the preservation of the interests of navigation and commerce, except so far as the same may be locally inapplicable, shall apply to said island and waters and to its adjacent islands and waters. Nothing in this chapter contained shall be construed so as to affect or impair in any manner the terms or conditions of any authorizations, permits, or other powers lawfully granted or exercised in or in respect of said waters and submerged lands in and surrounding said island and its adjacent islands by the Secretary of the Army or other authorized officer or agent of the United States prior to March 2, 1917."