**Dennis CREPPEL, Plaintiff-Appellee Cross-Appellant,**

v.

**SHELL OIL COMPANY, Defendant-Appellant Cross-Appellee.**

**No. 82–3673.**

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1984.

Adams & Reese, James E. Blazek, Lynn M. Luker, Arthur A. Crais, Jr., New Orleans, La., for plaintiff-appellee cross-appellant.

Heisler & Wysocki, Edmond J. Harris, New Orleans, La., for defendant-appellant cross-appellee.

Before CLARK, Chief Judge, JOLLY and DAVIS, Circuit Judges.

CLARK, Chief Judge:

Shell Oil Co. appeals from a jury verdict finding it liable to Dennis Creppel for damages to his shrimp boat allegedly incurred on a Shell mineral lease on a navigable waterway in Louisiana territorial waters in the Gulf of Mexico. Because the trial court did not instruct the jury properly on the duty of care that Shell owed Creppel, we reverse.

## I

The following recitation of facts favors plaintiff's proof. Creppel testified that shortly after midnight, August 15, 1980, he was piloting his shrimp boat toward Joseph Bayou to drop anchor for the night after an unsuccessful day of shrimping in the Gulf of Mexico. His shrimp boat struck an object and began taking on water. Creppel switched on the pumps and opened the engine full throttle, attempting to reach a levee. Several minutes and an uncertain distance later, his boat sank in about five feet of water on a Shell mineral lease. Neither Creppel nor his one crewmate was injured. Later that same day, a Shell crew brought equipment from its nearby facility and raised Creppel's boat.

Creppel testified that at the time of the accident, he did not know what he had hit or exactly where he had hit it. Creppel testified that eight days later, on August 23, 1981, he returned with three companions to what he believed to have been the approximate area of the collision. The group located a two and one-half inch pipe, which was completely submerged at high tide. But at low tide the pipe protruded a foot and a half above the water line at a thirty degree angle. Creppel photographed the pipe. The photographs admitted into evidence show a pipe in water, photographed from various angles and at various tides, and show various landmarks about the pipe, such as an oil platform, a well, a piling, and a channel marker.* A former Shell employee testified that prior to the accident he had seen this same pipe, recognizable by the landmarks in the photographs, that it was "at the end of the channel" on Shell's lease, and that long before Creppel's accident he had warned Shell that the pipe posed a danger to boats. Creppel's experts testified that a pipe like the one photographed could have caused the damage to the shrimp boat.

Creppel filed suit against Shell in district court, alleging admiralty as well as diversity jurisdiction over a Louisiana strict liability cause of action. In response to special interrogatories, the jury found Shell negligent and Creppel forty percent contributorily negligent. Creppel was awarded $48,000 in damages. The district court denied Shell's motions for directed verdict, judgment n.o.v., and new trial. Finding the jury instructions insufficient, we reverse and remand for a new trial.

## II

Over Shell's objections, the district court instructed the jury on the usual common law standard for negligence as failure to exercise reasonable care under the circumstances. The jury was told only to gauge whether Shell was negligent in terms of whether it acted as a "reasonably prudent person" would do under the same or similar circumstances. The court refused

---

* Because the case must be retried, we note that a sequence of photographs [P 2(c) and P 2(e)] was offered to show the site of the pipe at different stages of the tide. One of the photographs, P 2(e), apparently taken at high tide, shows unobstructed water with an oil well in the background and the edge of a boat deck in the foreground. The other photograph, taken from exactly the same angle and again showing the same oil well and the boat deck, purports to show the scene at a time of slightly lower tide, specifically described by Creppel as "when the pipe begins to be exposed." A submerged object is depicted in this photograph as a distinct sixteenth-inch angled streak circled in blue ink. Creppel testified that this was the pipe. However, the two photographs [P 2(c) and (e)] appear to be duplicate prints of a single exposure, identical with respect to every billow and shadow in the wave action on the surface of the water, and identical as to every other feature, except that one shows an object said to be a submerged pipe and one does not. The "submerged object" on P 2(c) could be an imperfection in the print. It simply could not be a separately exposed photograph.

Shell's request to instruct the jury that Shell, as a mineral lessee, was not a guarantor of the safety of persons navigating the waters within its leased area and, more specifically, that Shell had no duty to keep its leasehold waters free of obstructions that it had not placed there.

Because the alleged tort occurred in navigable waters, admiralty retains exclusive jurisdiction of this case. *See Branch v. Schumann,* 445 F.2d 175, 177–78 (5th Cir. 1971). "[T]he impinging on an anchor or other injurious impediment negligently left in the way has always been considered as coming within the category of maritime torts, having their remedy in the courts of admiralty." *The Philadelphia, Wilmington & Baltimore R.R. Co. v. The Philadelphia & Havre de Grace Steam Towboat Co.,* 64 U.S. (23 How.) 209, 216, 16 L.Ed. 433 (1860). Furthermore, the alleged tort bears a "significant relationship to traditional maritime activity." *In re Dearborn Marine Service, Inc.,* 499 F.2d 263, 275 (5th Cir.1974). Hence, this case does not fall within recognized exceptions to the general rule of "locality" as the exclusive determinant of admiralty jurisdiction. *See id.*

The parties have not favored the court with any of the fruits of their research concerning the applicable duty of care arising under federal maritime law in this case. Our research, however, has revealed no precedent in which a private party's liability for damages resulting from collision of a boat with an obstruction in navigable waters was predicated on any basis other than the defendant's ownership, custody, or placement of the obstruction in the navigable waters. In *Philadelphia, Wilmington & Baltimore R.R. Co.,* 64 U.S. (23 How.) at 209, railway bridge builders were held liable when a steamboat struck their submerged piles in the channel of the Susquehanna river. "Under such circumstances, it became the duty of the [builders] to take care that all the obstructions to the navigation, which had been placed in the channel by their orders, and for the purpose of their intended erection, should be removed." *Id.* at 216.

Similarly, in *Gele v. Chevron Oil Co.,* 574 F.2d 243 (5th Cir.1978), Chevron was held liable for damages to a pleasure craft that hit a structure in Chevron's oil field in the Gulf of Mexico, because evidence supported the district court's finding that the flare pipe belonged to Chevron.

Creppel offered no direct proof that the object which he hit belonged to or was placed in the water by Shell or was under its control. Rather, Creppel predicates Shell's duty solely on its status as mineral lessee with notice that the potentially hazardous object was in the water covering a portion of its lease. We find no basis in federal maritime law, however, for assigning to Shell the duty to clear its maritime leases of all obstructions of which it has notice, regardless of whether it owns or has placed the obstructions there or maintains them.

Shell leased this particular marine area from the State of Louisiana. Presumably, these territorial waters are within Louisiana's statutorily declared southern boundary. "The protection and control of the area are ... functions of national external sovereignty." *United States v. State of Louisiana,* 339 U.S. 699, 70 S.Ct. 914, 916, 94 L.Ed. 1216 (1950) (the United States is the owner in fee simple and has dominion over the area within Louisiana's southern boundary extending twenty-seven marine miles from the shore line). *See also United States v. State of California,* 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947). In return for exercising dominion over the navigable waters as an adjunct of commerce power under Article I, § 8, "[t]he Federal Government is charged with ensuring that navigable waterways, like any other routes of commerce over which it has assumed control, remain free of obstructions." *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 88 S.Ct. 379, 385, 19 L.Ed.2d 407 (1967).

Shell's lessor, the State of Louisiana, is not responsible, then, for policing and maintaining the navigable waterways in its territorial waters. Shell, as a mineral les-

see, has assumed no such obligations by virtue of its status as lessee. Accordingly, it owes no duty toward those using the navigable waterways to clear away obstructions that it does not own, has not placed there, or does not maintain there under its control.

These precedents suggest that the duties of a lessee of lands lying under a state's territorial navigable waters should be consistent with those of a lessee on the Outer Continental Shelf. Under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq., the Secretary of the Interior has promulgated the following regulation concerning the duty of the lessee to maintain safe and workmanlike conditions:

> (a) The lessee shall perform all operations in a safe and workmanlike manner and shall maintain all equipment in a safe condition for the protection of the lease and associated facilities, for the health and safety of all persons, and for the preservation and conservation of property and the environment.

> (b) The lessee shall immediately take all necessary precautions to control, remove, or otherwise correct any hazardous oil and gas accumulation or other health, safety, or fire hazard.

30 C.F.R. § 250.46.

This regulation does not make lessees insurors of their work areas. *Copeland v. Gulf Oil Corp.*, 672 F.2d 867, 868 n. 2 (11th Cir.1982). The Act does not "impose liability upon a lessee based upon violation of a departmental regulation when that lessee is admittedly free from fault." *Olsen v. Shell Oil Co.*, 561 F.2d 1178, 1189 (5th Cir.1977). A breach of the regulation provides no federal civil cause of action. *Id.* Furthermore, these regulations are in no way "analogous to safety regulations which require a specific standard of conduct in particular situations," and establish no special standard of care in a negligence action. *Bourg v. Texaco Oil Co.*, 578 F.2d 1117, 1120 (5th Cir.1978).

■ Hence we find no basis in federal regulations or applicable federal maritime law to impose upon a mineral lessee a duty to police the waters covered by its lease or to take steps to remove obstructions which it does not own, has not placed there, or does not maintain or control.

■ Arguably, there was circumstantial evidence in the record from which a jury might have found that Shell owned, maintained, placed, or controlled the pipe in its leased area. The cost and weight of a piece of two and one-half inch pipe long enough to have protruded from the water at this site make it unlikely that it had been used by fishermen or boaters as a marker. The fact that it was at an upright angle indicates it had not been lost or accidentally dropped at this point. The necessity for underwater piping systems and connections for offshore platforms together with the fact that the pipe remained upright after the impact with Creppel's vessel (an impact which not only holed the hull of his boat, but also scored a length of the bottom) could indicate that the pipe was attached to other piping or appliances installed or used by the owner of the leasehold.

The jury was not instructed that a finding of Shell ownership, placement, maintenance, or control was a prerequisite to holding Shell liable for Creppel's damages. The district court's general instructions on negligence were inadequate to instruct the jury about the principles of federal maritime law that govern this action. *Cf. Lind v. Aetna Casualty & Surety Co.*, 374 F.2d 377 (5th Cir.1967).

The judgment appealed from is

REVERSED AND REMANDED.