| | | |
|---|---|---|
| JACOB PUDERER | * | NO. 2020-CA-0383 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| HILCORP ENERGY | * | |
| COMPANY, NORTHCOAST | | FOURTH CIRCUIT |
| OIL COMPANY AND THE | * | |
| STATE OF LOUISIANA | | STATE OF LOUISIANA |
| THROUGH THE | \* \* \* \* \* \* \* | |
| DEPARTMENT OF NATURAL | | |
| RESOURCES | | |

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 62-597, DIVISION "A"
Honorable Kevin D. Conner, Judge
* * * * * *
**Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge James F. McKay, III, Judge Terri F. Love, Judge
Edwin A. Lombard)

Christine L. DeSue
ATTORNEY AT LAW
3445 N. Causeway Blvd.
Suite 505
Metairie, LA 70002

      COUNSEL FOR PLAINTIFF/APPELLANT

Kevin P. Merchant
Phillip M. Smith
NEUNERPATE
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, LA 70503

      COUNSEL FOR DEFENDANT/APPELLEE

            **AFFIRMED**
            **MARCH 24, 2021**

This is a maritime tort case. Appellant, Jacob Puderer, filed a negligence suit against Appellee, Hilcorp Entergy Co. ("Hilcorp"), alleging Hilcorp was liable to Appellant for damages resulting from an allision between Appellant's boat and an underwater obstruction under Hilcorp's care, custody, and control. Hilcorp disputed any ownership or lease interest in the allision site or control over the underwater obstruction and filed a motion for summary judgment. Appellant appeals the district court's judgment granting Hilcorp's motion for summary judgment. Finding that Appellant failed to raise genuine issues of material fact as to Hilcorp's ownership, placement, or control over the underwater obstruction, we affirm the summary judgment.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Puderer owned a commercial fishing boat. He authorized Eric Tiser to operate the boat. On or around November 12, 2014, Tiser went trawling for shrimp in appellant's boat in Township 22-S, Range 30-E, Section 17 ("Township 22-S") when the boat hit a submerged underwater obstruction in the late afternoon.

1

Tiser stated that the boat caught onto the unseen obstruction and that at one point, the combination of high winds and the weight of the boat pulled the obstruction out of the water. He stated that he was able to identify the obstruction as a wellhead with spindles that the boat's shrimp trawling equipment had stuck on. Tiser was able to free the boat after two or three hours, but it flooded and eventually sank somewhere between Tante Phine and Red Pass.

Mr. Puderer notified Hilcorp of the incident. Hilcorp sent its production foreman, Shane Ferguson, to the allision site identified by Mr. Tiser. Ferguson met with Tiser and "Joe," the boat's deckhand, about a day or two after the incident. Based on the GPS coordinates and information provided by Tiser, Ferguson marked the allision site with a PVC pole and completed an incident report.[1] Ferguson also accompanied Mr. Puderer to the location of the sunken boat and took photographs. On the same day, Hilcorp retained JRon Services Site Survey, a third-party dive service company, to survey the allision site. JRon's report concluded that a handrail was the only object that was above the mudline at the time of their survey which could have allided with the boat.

Mr. Puderer filed suit against Hilcorp, contending that Hilcorp was liable in tort for damages resulting from the loss of his boat. Mr. Puderer alleged Hilcorp held a lease in Township 22-S which encompassed the allision site and therefore, was responsible for maintaining any wellheads and/or underwater structures on or

---

[1] Appellant signed the incident report as the boat's owner. Tiser and Joe "the deckhand" were listed as "witnesses" on the report.

2

around the site.  Hilcorp denied the allegations.  After Tiser's deposition and the parties exchanged discovery, Hilcorp filed a motion for summary judgment.

Hilcorp's support for its motion for summary judgment included an affidavit from Max Douglas Weaver, its Chief Operations Engineer ("COE").  The COE's affidavit attested that Hilcorp was not the owner or lessee of any of the property Appellant identified as the allision site in his coordinates[2], nor did it own, control, place, maintain, have knowledge of, or derive any benefit from the alleged underwater obstruction that struck Mr. Puderer boat.[3]

---

[2] Appellant and Tiser presented Hilcorp with three sets of coordinates as the allision site. Ultimately, Appellant represented that the correct coordinates were N 29.10.980, W 089.790.

[3] The affidavit of the COE attested, in relevant part, to the following:

3.

 Hilcorp Energy Company does not hold any ownership or lease interest in any property located at any of the following coordinates: 1) N 29° 10'58.5", W 89° 26' 47.5"; 2) N 29.10. 989, W 089.26.790; 3) N 29.10.980, W 089.26.790.

4.

Hilcorp Energy Company did not hold any ownership or lease interest in any property located at any of the following coordinates in November 2014: 1) N 29° 10'58.5", W 89° 26' 47.5", 2) N 29.10.989, W 089.26.790; 3) N 29.10.980, W 089.26.790.

5.

Hilcorp Energy Company does not own anything in the waters located at any of the following coordinates: 1) N 29° 10'58.5", W 89° 26' 47.5"; 2) N 29.10.989, W 089.26.790; 3) N 29.10.980, W 089.26.790.

6.

Hilcorp Energy Company does not control anything in the waters located at any of the following coordinates: 1) N 29° 10'58.5", W 89° 26' 47.5"; 2) N 29.10.989, W 089.26.790; 3) N 29.10.980, W 089.26.790.

7.

Hilcorp Energy Company has not placed anything in the waters located at any of the following coordinates: 1) N 29° 10'58.5", W 89° 26' 47.5"; 2) N 29.10.989, W 089.26.790; 3) N 29.10.980, W 089.26.790.

Mr. Puderer countered that a genuine issue of material fact remained as to whether the allision site and the underwater obstruction were leased, maintained, and/or controlled by Hilcorp. In support of this argument, Mr. Puderer attached affidavits from Glenn Fleming, an abstractor, and his attorney, Christine L. DeSue. Their affidavits represented that a public records search documented that the original lease held by the Buras Levee District containing Township 22-S was assigned to Chevron, which in turn assigned all of its leases in Township 22-S to Hilcorp. Mr. Puderer's individual affidavit detailed the coordinates of the allision site and the area where his boat sank and declared, in part, that "[a]fter the incident, Hilcorp went back to the site and cleaned up any obstructions that were hanging up boats in the water.[4]"

At the hearing on Hilcorp's summary judgment motion, questions were raised as to whether Ferguson had identified a wellhead at the time he placed the

8.

Hilcorp Energy Company has not maintained anything in the waters located at any of the following coordinates: 1) N 29° 10'58.5", W 89° 26' 47.5"; 2) N 29. 10.989, W 089.26.790; 3) N 29.10.980, W 089.26.790.

9.

Hilcorp Energy Company has not received any benefit from anything in the waters located at any of the following coordinates: 1) N 29° 10'58.5", W 89° 26' 47.5"; 2) N 29.10.989, W 089.26.790; 3) N 29.10.980, W 089.26.790.

10.

Prior to November 12, 2014, Hilcorp Energy Company had no knowledge of and was not notified of the existence of a wellhead located underwater at any of the following coordinates: 1) N 29° 10'58.5, W 89° 26' 47.5"; 2) N 29.10.989, W 089.26.790; 3) N 29.10.980, W 089.26.790.

[4] Appellant also attested that "I personally took Shane Ferguson, a representative of Hilcorp, to the allision site the day after the incident."

4

PVC pipe marker at the allision site. The district court held the record opened on the motion for the parties to depose Ferguson.

Ferguson testified at his deposition that he saw "nothing but water" at the allision site where he had placed the PVC pipe marker. He asserted that to his knowledge, Hilcorp had no equipment, well locations, or other operations in the allision area. Ferguson stated that JRon, the diving service, only surveyed the allision area and did not remove debris.

Hilcorp supplemented its motion for summary judgment with Ferguson's deposition. Hilcorp argued that Ferguson's deposition reinforced its COE's affidavit that Hilcorp had no operations in the allision site or exercised any control over the submerged underwater obstruction.

Mr. Puderer supplemented its opposition with affidavits from Mike Dardar and Mark Franovich, other persons who went to the allision site. Dardar, a vessel operator in the area, asserted that on the day following the allision, Mr. Puderer and others were on Dardar's boat near the PVC pipe marker when Dardar's boat also got "hung up" on iron. Dardar stated that the man who freed Dardar's boat felt a valve. Franovich, a diver, went with Mr. Puderer to the site two weeks after the allision. Franovich attested that he went into the water and discovered a "Christmas-tree" style wellhead with valves, grating and casing for a well, and hand-rails. Mr. Puderer maintained that Dardar's and Franovich's affidavits created fact issues that countered Ferguson's deposition testimony that Ferguson

5

saw nothing in the water and also indicated that the underwater obstruction may have been a wellhead, rather than a hand-rail as identified in JRon's report.

After a second hearing, the district court granted Hilcorp's motion for summary judgment with prejudice. The judgment held, in relevant part, that:

> **IT IS ORDERED, ADJUDGED, AND DECREED** that the Motion for Summary Judgment brought by defendant, Hilcorp Energy Company, is **Granted**, as plaintiff Jacob Puderer has failed to meet his burden of showing that the alleged underwater obstruction on which his vessel was caught was owned by or under the control of Hilcorp Energy Company.

This devolutive appeal followed.

## DISCUSSION

### *Summary Judgment*

This Court discussed the appellate court's review of the propriety of summary judgment relief in *Simmons v. State*, 18-0174, pp. 3-4 (La. App. 4 Cir. 8/29/18), 255 So. 3d 701, 703-04, as follows:

> "An appellate court reviews the granting of a motion for summary judgment with the *de novo* standard of review." *Filmore Parc Apartments II v. Foster*, [20]16-0568, pp. 3-4 (La. App. 4 Cir. 2/15/17), 212 So.3d 621, 624. This Court uses "the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.*, [20]06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638. "In determining whether an issue is 'genuine,' courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence." *Smith v. Our Lady of the Lake Hosp., Inc.*, [19]93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751.

In summary judgment, "[t]he burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). However, in the event the mover does not bear the burden of proof at trial, "the mover's burden on the motion does not require him to negate

6

all essential elements of the adverse party's claim . . . , but rather to point to the absence of factual support for one or more elements essential to the adverse party's claim . . ." *Id.* The burden of proof then shifts to the adverse party "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to summary judgment as a matter of law . . . All evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion." *Id.*

Conversely, "[summary judgment] should be denied if there is (1) a genuine issue of fact and (2) it is material to the case". *Brown v. B&G Crane Service, Inc.*, 172 So. 2d 708, 710 (La. 1965). Genuine issues are those which reasonable persons could disagree on and thus require a trial to resolve. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93–2512, p. 27 (La. 7/5/94), 639 So. 2d 730, 751. Facts are material if they would matter in a trial on the merits because they would ensure or prevent recovery, affect a party's success, or otherwise determine the outcome of the case. *Id.*

Appellate courts review summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate.

### *Assignment of Error*

Appellant's sole assignment of error contends Hilcorp was not entitled to summary judgment because Appellant presented genuine issues of material fact as to: (1) whether the allision site was within an area leased by Hilcorp; and (2) Hilcorp's ownership and/or control over the underwater obstruction.

The parties agree that general maritime law governs this negligence action because the alleged tortious incident occurred in navigable waters. Established

maritime jurisprudence provides that a private party, such as a defendant mineral lessee, assumes liability for damages resulting from an allision of a boat with an obstruction in navigable waters only when it has ownership, custody, or is responsible for the placement of the structure in navigable waters. *See Creppel v. Shell Oil Co.*, 738 F.2d 699, 701 (5th Cir. 1984).

In *Creppel*, the plaintiff's shrimp boat struck an object in navigable waters leased by the defendant's oil company. An employee of the defendant testified at trial that the company was aware of the object's existence and that he had warned his employer of danger posed by the object. At the close of trial, the jury received instructions regarding the negligence claim that summarized the defendant's duty to the plaintiff in terms of "whether it acted as a 'reasonably prudent person' would do under the same or similar circumstances". *Id.* at 700. The appellate court found that this instruction was improper, as it would impose liability on lessees for objects found within their lease regardless of whether they owned, placed, or maintained the objects in question. The court also dismissed the idea that notice of an obstruction would suffice to create a duty to clear waterways covered by their mineral leases. *Id.* at 698. The court reversed the judgment against the mineral lessee, reasoning that:

> [W]e find no basis in federal regulations or applicable federal or maritime law to impose upon a mineral lessee a duty to police the waters covered in its lease or to take steps to remove obstructions which it does not own, has not placed there, or does not maintain or control.

*Id.* at 702.

Here, Hilcorp's COE affidavit, which denied any form of control over the underwater obstruction, shifted the burden of proof to Appellant. Accordingly, in our review of Hilcorp's entitlement to summary judgment, this Court must

8

determine if Appellant offered sufficient evidence to establish the existence of genuine issues of material fact to rebut Hilcorp's denial of its ownership, custody, or placement of the alleged obstruction in the allision site's navigable waters.

We first review Appellant's argument that he presented facts to dispute Hilcorp's claim that it held no lease covering the allision site. Appellant points to the affidavits of the abstractor and his attorney to demonstrate that Appellee was assigned all of Chevron's leases in the waterway where the allision occurred. Appellant additionally argues that because of the lease assignment from Chevron, Appellee had notice of the existence of the obstruction. As referenced in *Smith v. Our Lady of the Lake Hosp.*, a material fact is one that is essential to plaintiff's cause of action under plaintiff's theory of recovery. *Creppel*, which controls in the present matter, conclusively establishes that Appellant's right to recover against Hilcorp hinges on Hilcorp's ownership, custody, or placement of the alleged obstruction in the waterway, not its status as a mineral lessee or its notice of the alleged obstruction. *Creppel* also holds that there is "no basis in federal maritime law, however, for assigning to Shell the duty to clear its maritime leases of all obstructions of which it has notice, regardless of whether it owns or has placed the obstruction there or maintains them". *Creppel*, 738 F.2d at 701. In *Creppel*, the allision took place in waters covered by the defendant's mineral lease with an underwater obstruction. At trial, an employee of the defendant stated he had notified his employer of the existence of the obstruction and the danger it posed. *Id*. at 700. Notwithstanding those facts, the court found that the defendant mineral lessee did not owe a duty to the plaintiff without direct proof of the defendant's ownership, custody, or placement of the obstruction. *Id*.

9

Even if Appellant here had offered conclusive evidence of Appellee's mineral lease over the allision site and/or notice of the obstruction therein, this would not ensure Appellant's recovery or otherwise have an effect on the outcome of the case. Consequently, the questions of whether Hilcorp holds a lease over the site and accordingly had notice of the obstruction are not material facts and Appellant's argument that Hilcorp was not entitled to summary judgment because of the alleged lease lacks merit.

Appellant further contends that the contradiction between the Dardar and Franovich affidavits and Ferguson's deposition testimony create a genuine issue of material fact as to the existence of the alleged wellhead that can only be resolved at trial. However, standing alone, the existence of the obstruction in the vicinity of Appellee's operations is another non-material fact which has no outcome on Appellant's case without evidence linking the obstruction to Appellee. *See Guidry v. Apache Corp. of Delaware*, 236 Fed. Appx. 24, 25 (5th Cir. 2007), 2007 WL 1577923, *1.

Accordingly, we now consider Appellant's argument that fact issues regarding Hilcorp's ownership, control, or placement of the underwater obstruction prohibited summary judgment. In this argument, Appellant maintains that the Dardar and Franovich affidavits established that the obstruction was a wellhead in an area leased by Hilcorp; and moreover that Appellant's affidavit and Tiser's deposition testimony[5] demonstrated Hilcorp exerted its control and/or maintenance

---

[5] Tiser's deposition testimony included the following:

    Q. So you don't have any of the items that you would have hung up on?

               ***

    A. No, ma'am. Hilcorp's got them.

of the wellhead by its return to the allision site to clean up debris and/or obstructions.

Appellant argues the facts of this case align with *Savoie v. Chevron Texaco*, 04-1302, 2005 WL 2036740 at *5 (E.D. La. July 22, 2005), where the federal district court denied the motion for summary judgment of the defendant, Chevron Texaco. As in the present matter, Chevron Texaco contended that plaintiffs had failed to offer evidence that it owned and/or controlled the underwater obstruction -believed to be pilings and a pipeline-that allegedly struck plaintiff's boat and only conceded to having operations in the vicinity of the allision. The plaintiffs opposed summary judgment with a claim that the plaintiff was shown photographs by Chevron Texaco representatives of pilings that had been removed from the allision site to a Chevron Texaco camp and deposition testimony from a former Chevron Texaco employee who saw the pilings at a Texaco Chevron camp sometime after the accident. Plaintiffs also asserted that Chevron Texaco had not fully cooperated with plaintiffs' discovery demands. The district court concluded

---

Q. I'm going to assume that's an assumption.

A. No. They have them.

Q. Have you seen them?

A. They picked them up. They picked them up on the barge, on a diving barge.

Q. Did you watch them picking items up?

A. I watched them go down there.

Q. You watched them go down there?

A. Yes, ma'am

Q. But you didn't see them actually doing any work?

A. No. No. Well, I'm just going by hearsay what my podners [sic] told me that worked out there.

11

that, drawing all inferences most favorable to the non-movant, the plaintiffs' opposing evidence was sufficient to create a genuine issue of material fact regarding Chevron Texaco's responsibility for the submerged objects at issue.

Appellant suggests this Court should reach a similar result. Nonetheless, we find the facts in *Savoie* distinguishable from the case at bar. Although in both cases a defendant mineral lessee only conceded to having operations in the vicinity of plaintiff's allision with an underwater obstruction, the plaintiff in *Savoie* offered corroborating evidence to establish a genuine issue of material fact regarding the defendant's ownership, placement or control over the obstruction. Here, unlike in *Savoie*, Appellant failed to offer any corroborating evidence from a Hilcorp employee or any other independent source to establish Hilcorp's ownership, placement, or control over the underwater obstruction. Instead, Appellant relied on his affidavit and Tiser's deposition testimony to contend that Hilcorp's alleged removal of objects and debris from the allision site demonstrated its control over the wellhead/obstruction. However, neither Appellant's' affidavit nor Tiser's deposition testimony documents this contention. In particular, Appellant did not attest that he directly witnessed Hilcorp's clean-up of the allision site or removal of objects. Similarly, Tiser did not testify that he witnessed any Hilcorp representatives pick up or remove objects from the allision site. Rather, close scrutiny of Tiser's deposition testimony reveals that he was "just going by hearsay what my podners [sic] told me that out worked there." In further contrast to *Savoie*, here, the summary judgment hearing was held open to allow the parties to supplement the record with additional discovery evidence, yet appellant did not attach any affidavits or sworn statements from Tiser's associates who allegedly viewed the cleanup. Proof which consists of mere speculation and conclusory and

unsubstantiated allegations is not sufficient to overcome summary judgment. *See Enclade v. A.H.G. Solutions, LLC*, 16-0357, p. 13 (La. App. 4 Cir. 11/16/16), 204 So. 3d 661, 668 (citations omitted).

Furthermore, while the plaintiffs in *Savoie* overcame summary judgment at the outset of the case through a showing of corroborating evidence that raised genuine issues of material fact as to the link between defendant and the alleged obstruction, the district court ultimately did grant summary judgment to the defendant after discovery directly controverted that corroborating evidence and plaintiff failed to produce any other evidence that the defendant placed, owned, or controlled the alleged obstruction. *See Savoie v. Chevron Texaco*, No. 04-1302, 2006 WL 2795460, *2-3 (E.D. La. Sept. 27, 2006) (*"Savoie III"*). Without that corroborating evidence, the present case more closely resembles the final decision in *Savoie*.

Finally, even if Hilcorp had removed objects or worked in the general area of the allision, this fact would not, on its own, provide proof of ownership or control over the obstruction for purposes of defeating summary judgment. *See Luke v. Hilcorp Energy Co.*, No. 14-1549, 2015 WL 1810786, *2 (E.D. La. Apr. 20, 2015), where the district court granted defendants' motions for summary judgment, finding that evidence showing defendants may have worked or removed piling from the general area where the plaintiff struck a submerged object was insufficient to show ownership or control.

Based on our *de novo* review, construing evidence in the light most favorable to Appellee, the record substantiates that Appellant presented no countervailing factual support to contest Appellee's COE affidavit that it did not own or control the underwater obstruction that allided with Appellant's boat.

Accordingly, Appellant cannot prove an essential element of recovery to show Hilcorp's liability for his damages.

## CONCLUSION

For the above-mentioned reasons, we find Appellant failed to meet his burden of proof regarding the existence of genuine issues of material fact that would preclude Hilcorp's entitlement to summary judgment. As such, the judgment of the district court is affirmed.

**AFFIRMED**